In re Estate of George H. Meyer, Deceased.
Esther Kell, Appellant, v. Irving C. Deschauer, Executor of Last Will and Testament of George H. Meyer, Deceased, Appellee.

Gen. No. 9,813.

Opinion filed December 22, 1942.

HALL & HULSE, of Waukegan, for appellant.

PHILIP A. POPULORUM, of Waukegan, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
The contest in this case involves the ownership of a promissory note and a deed of trust securing the same. Appellant claims ownership thereof by virtue of an alleged gift to her by George H. Meyer, the decedent. The probate court of Lake county, on appellant's petition, appellee's answer and a hearing, entered an

order in favor of appellant. The circuit court, on appeal and a hearing on a transcript of the evidence taken in the probate court, entered a decree finding the securities did not become the property of appellant by either a gift *causa mortis* or by a gift *inter vivos,* but belong to the estate of the decedent. To reverse that decree this appeal is prosecuted.

The securities in controversy consist of a promissory note for $2,500, dated January 6, 1929, due in three years and a deed of trust securing the payment thereof, all executed by Ferguson Harkness and wife, the notes being payable to the order of themselves and indorsed by them. The principal sum has been reduced, by payment, to $2,000 and the maturity thereof extended to November 4, 1944.

The decedent and appellant each lived in the village of Lake Zurich. Appellant taught school six or seven miles from the village. The decedent was 74 years of age. He was failing in health and lived alone, except that appellant attended to his house work mornings and evenings. He had been operated upon and when he came home appellant had dressed the sore.

James Davidson, a neighbor, 73 years old, who operated a filling and milk station, testified that on a Saturday in November 1940, he took the decedent to a doctor's office located in a hospital at Palatine; that on the way to the doctor's office the decedent said he had some papers he wanted to leave at the Lake Zurich bank for Esther Kell; that the bank was closed, and the decedent said he would stop when he came back; that they had to wait some time at the hospital for the doctor, and decedent said he did not think they would get back in time to get into the bank; that when the doctor came, he examined the decedent, and said he would like to keep him there for a couple of days; that decedent had a package of papers wrapped in a paper bag; that he gave the package to the witness, saying: ''You take the package and give it to Miss Kell: I got to stay here two or three days.''

The decedent never left the hospital, but died the following Thursday, November 28, 1940. Mr. Davidson further testified he put the package in the back seat of his car, and was busy two or three days before he thought about it; that he called twice at appellant's house across the street from his filling station at about five or six o'clock in the evening, but did not find her; that he saw her once at a distance on the street, but did not get to talk to her about the package until after the decedent's death; that when he could not find appellant he thought he had better take the package to appellee (Irving C. Deschauer), because he thought appellee was looking after the papers for Mr. Meyer; that he went to Mr. Deschauer's office two or three times, but did not find him, and finally left the package with A. R. Schnaebele, a real estate man who has office space in Mr. Deschauer's office. Mr. Davidson did not know what the package contained until he was afterward informed of the contents by Mr. Deschauer. It was stipulated that the package contained an abstract of title, the note above described, with coupon notes, the trust deed securing the same, an opinion of title and an insurance policy. Pinned to the coupon notes was a memorandum reading: "Lake Zurich, Ill., November 16, 1940. It is my desire that these notes be turned over to Esther Kell after my death. George H. Meyer." The memorandum, with the exception of the signature, is in Miss Kell's handwriting. The real estate had been purchased by Mr. Davidson, subject to the incumbrance.

Mr. Davidson further testified that a few days before going to the hospital the decedent told him at the filling station in the presence of Arthur E. Briggs, that he was "going to make it right" with appellant. Mr. Briggs testified that he told the decedent he had nobody to help him except appellant, and that he ought to remember her, to which the decedent replied that he had "remembered" her, and was going to "remember her more."

Irving C. Deschauer, appellee herein, testified that when he found the package on his desk, he took it over to Mr. Davidson's office and asked him: "Jim, what about this package? What do you know about it?" that Mr. Davidson replied: "Well, I found it in the back of my car when I was cleaning up"; that after some further conversation about the contents, the witness asked Mr. Davidson: "You didn't know it was left in the back of the car?" to which he replied: "No, I didn't." Appellee further testified that Davidson, in this conversation, said nothing about Miss Kell, but did in a later conversation tell him that the decedent delivered the package to him to turn over to Miss Kell for safekeeping until he got back from the hospital.

Mr. Schnaebele testified that on the day after the decedent's funeral, Mr. Davidson brought the package to Deschauer's office and said: "There's something I found in the back of my car when I was cleaning it yesterday, a package that George Meyer took with him when I took him to the hospital. Now, on the way he asked me to drive him to the bank, he said he wanted to leave it at the bank and put it in his deposit box; and when we got to the bank the bank was closed; and that Mr. Meyer said: 'Well, I'll take it along with me. I'm not going to stay at the hospital tonight.'" That in this conversation Mr. Davidson further said: "He (meaning the decedent) went so sudden that he (Davidson) had forgotten all about the package until he (Davidson) cleaned his car"; and that Davidson also said: "Irving (meaning appellee) is looking after Meyer's affairs, so I thought I better turn it over to him"; and that Mr. Davidson, in this conversation, did not mention anything about Miss Kell.

On Mr. Davidson's previous cross-examination he had denied telling Mr. Deschauer that the decedent delivered the package to him to turn over to Miss Kell for safekeeping, and testified he did not remember

telling Mr. Schnaebele: "Here is something I found in the back of my car yesterday when I was cleaning up," nor remember talking to him at all, and said, "I never talked to that man yet." He was not put on the stand in rebuttal of any of the other testimony of Mr. Deschauer or Mr. Schnaebele.

There is no testimony in the record that tends to show that the decedent knew he was seriously ill when he went to the doctor's office at the hospital, or when he allegedly handed the package to Mr. Davidson. The testimony of the latter is that the decedent did not say he thought he was going to die, or express any concern about his health or physical condition; that he did not talk much, did not seem to be very sick, or say that he was, but told the witness, when he went to the hospital that he thought he would be back home the same night.

There are three requisites necessary to constitute a *donatio causa mortis:* 1. the gift must be with a view to the donor's death; 2. it must have been made to take effect only in the event of the donor's death by his existing disorder; 3. there must be an actual delivery of the subject of the donation. (*Telford v. Patton,* 144 Ill. 611; *Williams v. Chamberlain,* 165 Ill. 210.) The first and second of these requisites being lacking here, it is obvious that the alleged gift cannot qualify as a gift *causa mortis.* It remains to be seen whether it was a completed gift *inter vivos.*

To constitute a gift *inter vivos* there must be a delivery of the property and a parting with all present and future domination over it, and it is essential to the validity of the gift that it be absolute and irrevocable. It is not essential that the delivery be made directly to the donee but a valid delivery may be made to a third party for the donee. The delivery, however, must be with the intention of vesting the title absolutely and irrevocably in the donee and the donor must relinquish all present and future dominion and

power over the subject matter of the gift. If the gift is not completed during the lifetime of the donor his death revokes the part which has been performed. There must be the intention of making a gift, but intention alone, that the donee shall have the property does not make a gift. The delivery of the subject of the gift into the possession of the donee or some third person for his benefit is essential, and the delivery must be with the intention of vesting the title and the immediate right of possession of the property in the donee or it will be insufficient (*Hopkins v. Hughes,* 340 Ill. 604, 610–611; *Kelly v. Dyer,* 359 Ill. 46; *Northern Trust Co. v. Swartz,* 309 Ill. 586; *Rothwell v. Taylor,* 303 Ill. 226.) If the delivery is absolute and unconditional, so that the gift takes effect at once, the assent of the donee may be implied. (*Taylor v. Harmison,* 179 Ill. 137, 141.)

Where delivery is made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto as disclosed by the evidence. On a delivery to a third person as the agent of the donor, the gift is not complete, and the death of the donor before the delivery to the donee works a revocation of the gift, but by delivery to one as the agent of the donee an irrevocable gift is made, which is not affected by the death of the donor before the property comes into the hands of the donee. (*Jennings v. Neville,* 180 Ill. 270; *Trubey v. Pease,* 240 Ill. 513; *Telford v. Patton, supra;* 28 C. J. 640, sec. 32; 12 R. C. L. 935, sec. 12.)

Appellant contends that because of the relation of the parties, the instructions to Mr. Davidson, and the

conversations of the decedent prior to the time he went to the hospital, and the absence of any showing to the contrary, the presumption arises that Mr. Davidson was a trustee for appellant, citing the following expression in *Varley v. Sims,* 100 Minn. 331, 111 N. W. 269, 8 L. R. A. (N. S.) 828 at page 830: "But, unless the contrary appears, it will be presumed that the person to whom delivery is made takes as the trustee of the donee." There are several reasons why this contention cannot be sustained. In the first place, a gift is a voluntary, gratuitous transfer of property by one to another. It is essential to a gift that it should be without consideration. If a legal liability existed against the deceased it could not be discharged by a gift. (*Martin v. Martin,* 202 Ill. 382.) The statement of the decedent to Mr. Davidson and Mr. Briggs, before he went to the hospital, indicates that he intended to remunerate appellant for her services. While the statement does not imply that he felt there was a legal liability on his part to appellant, and may be considered as showing an intention to make a gift to her by some means and at some future time, it does not have any bearing upon the question of whether in the particular transaction Mr. Davidson was the decedent's agent or was a trustee for appellant. The memorandum pinned on the notes disclosing an intention that the gift should be effective after the death of the decedent is a circumstance strongly tending to rebut the presumption mentioned.

The only reason that could be assigned for the decedent handing the package to Mr. Davidson is that, because of his detention at the hospital, he knew he could not put it in the bank for two or three days. This does not indicate any change of his intention from that set out in the memorandum,—that is, that the gift was to be effective only at his death. The words attributed to him: "You take that package and give it to Miss Kell, I got to stay here two or three

days,'' are compatible with the same intention expressed in the memorandum. Under the circumstances, they do not, in our opinion, show an intent to presently vest her with the absolute, irrevocable title to the securities.

The law never presumes a gift, and the burden of proving all facts required to create a valid gift *inter vivos* is on the donee. The essential facts to be established are the delivery of the property by the donor to the donee, with the intent to pass the title. To sustain the gift, the proof must be clear and convincing. (*People v. Polhemus,* 367 Ill. 185, 191; *Bolton v. Bolton,* 306 Ill. 473, 486.) It is incumbent on the party asserting the trust to prove it by clear and satisfactory evidence. Whether a trust exists is to be determined from the proof, having in view all the surrounding facts and circumstances and the intention of the parties, and the proof must be clear and explicit. The words and acts relied upon as creating the trust must show clearly and unequivocally the intention of the donor to create a trust. (*Trubey v. Pease, supra.*)

Mr. Schnaebele testified that Mr. Davidson did not mention appellant in his conversation with him, and Mr. Deschauer testified likewise as to the first conversation he had with Mr. Davidson. Mr. Schnaebele also testified that Mr. Davidson told him that decedent told him he intended to put the package in his deposit box at the bank, and that he, Davidson, found it in his car when he was cleaning up the day before (the day of the funeral). Mr. Deschauer testified that Mr. Davidson told him in the first conversation that he found the package in his car when he was cleaning up and that he did not know it was in the car. None of this testimony is contradicted, except by Mr. Davidson's testimony that he had never talked to Mr. Schnaebele. That he would walk into the office, leave the package and depart without saying anything to Mr. Schnaebele, with whom he testified he left the

package, seems incredible. That his memory was faulty is demonstrated by the fact that on his direct examination he said he went to appellant's house twice, and that once he had the package with him, and that he left it in the car the other time. On redirect examination he said he went to appellant's house twice, and did not have the package with him on any occasion, but that it was in his car in his garage. On recross-examination he said he went to appellant's house three times. Making trips for the purpose of delivering a package without taking the package along would be a strange circumstance. He admitted that on his first conversation with Mr. Deschauer, the latter asked him: "Well, how did you get ahold of it?", and that he replied: "I was cleaning up the back of my car, and I found it there. I have been trying to turn it over to you, and then I left it with the man in the office. That is how I got control of the package."

Under all the facts and circumstances in the record we are unable to say that appellant has established, by that clear and satisfactory proof essential to a gift *inter vivos,* two of the elements essential to such a gift; namely, that the decedent intended to presently vest the title to the securities in her as an absolute and irrevocable gift, and that Mr. Davidson was a trustee for her in that behalf.

While it may be a matter of regret that the intention of the decedent cannot be carried out still, in our opinion, the evidence fails to show a gift *causa mortis* or a gift *inter vivos.* The decree of the circuit court is affirmed.

*Decree affirmed.*