*In re* MARRIAGE OF LORETTA V. LUKAS, Petitioner-Appellee, and JOSEPH J. LUKAS, Respondent-Appellant.

First District (4th Division)   No. 78-1745

Opinion filed April 24, 1980.

Edward R. Nathanson, of Chicago (Sidney K. Karasik, of counsel), for appellant.

Larry M. Karlin and Stanley F. Kaplan, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Joseph J. Lukas, respondent (husband), appeals from the provisions of the supplemental judgment allocating and awarding property and maintenance in a marriage dissolution proceeding tried in the circuit court of Cook County. Neither husband nor Loretta V. Lukas, petitioner (wife), objects to the earlier judgment which dissolved the marriage under the

Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq*. (Dissolution Act).

On appeal, husband contends: (1) his workmen's compensation proceeds were not a transferable marital asset within the purview of the Dissolution Act, and the trial court's award of a portion of the proceeds to the wife was prohibited by the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.21); and (2) the trial court's award of permanent maintenance to the wife was disproportionate in relation to the distribution of the marital property and excessive in that there was insufficient evidence that the wife was unable to support herself.

We affirm.

The evidence, much of it submitted by stipulation, shows the husband and wife were married for over 31 years prior to their separation in 1977. Three children were born to them, all of whom had reached majority and were living away from the parties when the proceedings here began.

It appears that for the first six years of marriage, the wife, who had a high school education, was employed as an office worker doing filing and typing. Thereafter, she devoted her full time to maintaining her role as homemaker and raising the children. On occasion, she attended some classes to reestablish her office skills but she has had no actual employment for over 25 years.

For the past eight years the wife has been under the care of a physician. She suffers from pleurisy, menopausal disfunction and nervousness. She is now 53 years of age. The past 31 years she has resided in the marital home located in Chicago.

The husband, who is now 56 years of age, is a skilled machinist and mechanic and has been employed by the Willard Company for over 25 years. His net earnings, including overtime, average approximately $1350 per month.

In 1972, the husband, while at work, sustained an elbow injury; in 1973 he suffered a fracture of his left kneecap; in 1974, he sustained a fracture of his right kneecap. Shortly after each injury he received a lump sum workmen's compensation award in the respective amounts of $3701.25, $4000 and $4000. Twenty percent of these sums was paid out in attorney's fees.

Initially, he placed the net proceeds into a joint savings account standing in the name of the husband and wife. The record is unclear as to exactly when this joint account was first opened, but it appears to have been in early 1972. The record discloses the husband made various deposits into and various withdrawals from this account prior to depositing any of the workmen's compensation awards into it.

In December of 1977, the husband withdrew $10,000 from this joint account and purchased a savings and loan certificate of deposit naming himself as trustee-owner of the certificate for the benefit of the parties' granddaughter, Christine Collins. The record further discloses that the husband, sometime around December 1977 withdrew $964.44 from this same account. Further, it appears that there was another joint savings account held by the parties. This second account contained $5577 in April 1977 and thereafter through various withdrawals by the husband, a balance of about $300.00 remained in that account as of March 10, 1978, when the trial court conducted the supplemental hearing in this case.

The parties stipulated that the marital home, a bungalow, was unencumbered, was held in joint tenancy, and was worth about $30,000. The husband owned a 1965 Dodge automobile and had purchased and given to the wife a 1974 Ford automobile. The parties also agreed that the marital residence contained furniture and furnishings of insubstantial value.

The wife contended that her monthly expenses as budgeted came to $1106.75 and that she would require an additional allowance to meet any income tax liability were she awarded taxable maintenance. At trial, the husband, while stipulating the wife would so testify as to her financial needs, did not agree that the amount claimed by her was accurate. He did not, however, present any evidence to counter the wife's testimony.

The wife also testified that she had a checking account with $200 in it; that she had no stocks or bonds; that she was unable to work or even seek employment because of her illness; that she was dependent on the husband for her support but in view of his failure to give her adequate funds she was compelled, since the separation, to borrow about $5,000 from her sister and daughter.

The wife stated further that she and the husband had borrowed $3300 from her mother to pay for an addition to the marital home; and this loan was never repaid. Also, when the house was purchased, a $5,000 down payment was supplied from the wife's savings and a cash gift from her mother. At the time of the house purchase, the husband was still attending school and did not go to work until about one year after the marriage.

The wife submitted a list of debts totaling about $5,000 which she said she incurred approximately between the time her divorce action was filed in April 1977 to the date of the supplemental hearing on March 10, 1978. Without objection, the list was admitted into evidence. It was the wife's position that the debts listed, including $2,000 borrowed from her sister to pay attorneys' fees in the sum of $1,000 and to pay for detective services in the sum of $1,000 , should be repaid to her by the husband. She likewise sought reimbursement for the other listed debts claiming they

should be paid by the husband over and above the sums allowed her under the temporary maintenance award granted by the court on October 5, 1977, and which provided an allowance to her of "＊ ＊ ＊ one-third of his weekly net pay, but in any event a minimum of $80.00 per week."

The husband asserts he is troubled with leg and knee weakness stemming from his previous injuries; additionally, he has a fractured right wrist which is not presently amenable to surgical treatment. He works on heavy duty machinery, rebuilding transmissions, adjusting power steering and correcting gears. He has been regularly working since his last accident and for most of the past 10 years has been allowed to work on an overtime basis. Without overtime, he earns about $1,000 net per month. Since the entry of the order granting the wife temporary allowances, he has been paying her an average of about $86 per week. He did give her about $200 per week when he earned his regular salary and $250 per week when he worked overtime; and additionally he would pay the water bills, real estate tax bills, car expenses and house repair expenses.

Further, the husband contends that since his separation he has lived with his mother whom he pays between $75 to $155 per week for room and board. His weekly expenses average about $150. He paid, in addition to the court-awarded allowances, $4,000 of the wife's bills including doctor expenses, eyeglass costs, $1,000 for a new furnace for the marital home and many miscellaneous expenses.

The husband also claims he has, as the totality of his assets, a checking account with about a $200 balance, one $50 bond, the old automobile, his interest in the marital home and his job. He acknowledges that he has some insurance through his employment and some benefits from a union-supported pension which may be available to him upon his retirement and reaching a certain age. He admits that he withdrew funds from the joint savings accounts despite an injunction order which had issued on April 28, 1977, but asserts the money was used almost exclusively to pay the wife's bills. Further, he agrees that his 1976 income tax return would show a gross income for that year of $26,751.24 and that his gross income for 1977 would be about the same.

The husband contends the marital residence should be partitioned or sold immediately by agreement of the parties and that the net proceeds be divided equally. Counsel for the husband states that in view of the length of the marriage and other considerations, the wife was entitled to a fair share of marital property and some maintenance for a reasonable period of time but not a permanent maintenance allowance. He urges that the court direct the wife to take employment; and importantly, that the husband keep the $10,000 certificate of deposit as his sole property, it representing his workmen's compensation awards.

The record indicates the hearing before the court was conducted in a manner bordering on the informal; much of the evidence was presented with agreement on both sides and accepted for whatever value was discernible to the court.

The court's supplemental judgment was entered on June 9, 1978. It provided, *inter alia*, the wife would have the first right, subject to certain conditions, to purchase the husband's interest in the marital residence within a period of 90 days and, if she was unable to effectuate the purchase, the husband, under certain conditions, would have the right to purchase the wife's interest. In the event neither party could effectuate the purchase within the prescribed period, the wife would have the right to reside in the property for a period up to four years after which time the property was to be sold on the open market and the net proceeds divided equally between the parties. Until the sale of the property, the husband was obligated to pay the real estate taxes and the "household insurance" and share equally in the expense of any major repair as more fully detailed in the supplemental judgment provision.

The supplemental judgment, without exactness and without defining certain possible future changes in circumstances, further provided essentially the following:

a. The husband is to pay the wife permanent maintenance equal to 40% of his net income from all sources, including overtime earnings but with a maximum of $10,000 per year and a minimum of $5,200 per year. The obligation to pay 40% of net income would be reduced to 25% of net income were the wife to earn $600 or more net per month.

b. The husband is to keep in full force and effect certain life insurance and he is to designate the wife as the irrevocable beneficiary so long as he is obligated to pay maintenance.

c. The husband is obligated to pay the debts (approximating $5,000) incurred by the wife and as listed in the exhibit made part of the supplemental judgment and to pay to the wife an additional $2,000.[1]

d. The wife is awarded, as her sole property, all of the furniture and furnishings contained in the marital residence and the Ford automobile in her possession.

e. Each party is to pay his and her own attorney's fees.

---

[1] The record indicates that at the time of the evidentiary hearing the husband already had withdrawn $10,000 from the parties' joint savings account with which money he purchased a certificate of deposit. The joint savings account had a remaining balance of a few hundred dollars. Nevertheless, the supplemental judgment directed the husband to pay out of that joint savings account approximately $7,000. It is apparent the parties continued to treat the certificate of deposit as being a resource of the joint savings account.

On July 7, 1978, the husband, by new counsel, filed his motion before the trial court seeking a reconsideration of the terms of the supplemental judgment and requesting a rehearing on the matters relating to the award of property and maintenance. Counsel for the husband filed a memorandum of law in support of the motion.

The memorandum set forth, in some detail, the husband's attack on the terms of the supplemental judgment. In particular, the supporting memorandum claimed the trial court erred by awarding excessive maintenance contrary to the standards and provisions set forth in sections 504(a)(2), (b)(2), and (b)(6) of the Dissolution Act. (Ill. Rev. Stat. 1977, ch. 40, pars. 504(a)(2), (b)(2), (b)(6)), and that the award, in view of the husband's limited earnings, exceeded the husband's ability to pay. It also urged that the wife is capable of employment and has adequate skills to do office work and earn a sufficient amount with which to support herself. Further, at most, the wife should receive a reasonable amount of "rehabilitative" or "transitional" maintenance for a limited period of time to redevelop her skills and obtain permanent employment. The memorandum rejected the wife's claim of such serious illness as to prevent her from working on a regular full time basis.

On August 29, 1978, after hearing arguments of counsel, the motion of the husband for reconsideration of the terms of the supplemental judgment and for rehearing on the property and maintenance issues was denied. On September 13, 1978, the notice of appeal was filed by the husband asking for a reversal of the order of August 29, 1978, which denied reconsideration of the property maintenance terms of the supplemental judgment entered on June 9, 1978, and also seeking review of the supplemental judgment itself. Pending appeal, pursuant to an order of this court setting a stay bond, the husband was directed to make the payment of allowances as previously set forth in the temporary allowance order entered by the trial court on October 5, 1977.

Opinion

I

We first turn to the contentions of the husband that his workmen's compensation award was not a transferable marital asset within the meaning of the Dissolution Act, and its award to the wife was prohibited by the Workmen's Compensation Act.

Initially, we note, the husband's contentions assume that a workmen's compensation award paid to an injured employee during his marriage is not marital property subject to allocation by the court in a dissolution of marriage proceeding. We disagree with that assumption.

Section 503 of the Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) permits the court to allocate marital property, regardless of who holds title, to each spouse in just proportion after considering all relevant factors including, *inter alia*, the contributions of each spouse, their relative economic circumstances, their age, health, occupation, and other available income and whether the apportionment is in lieu of or in addition to maintenance.

Sections 503(a) and (b) of the Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a), (b)) provides:

"(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section."

■■ A workmen's compensation award paid out to and received by an injured employee during his marriage is not property acquired by gift, bequest, devise or descent or property acquired in exchange for such property (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a)(1), (a)(2)), and thus does not fall into the category of nonmarital property which cannot be allocated between the spouses. Nor can it be considered nonmarital property under the definitions set forth in sections 503(a)(3) through (a)(6) of the Dissolution Act. (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a)(3)-(a)(6).) Accordingly, it is clear that the workmen's compensation award, to the extent that it accrued and was actually paid over to the injured employee during the marriage, is marital property that is allocable in

accordance with the standards set forth in the Dissolution Act. Ill. Rev. Stat. 1977, ch. 40, par. 503.

We find no workmen's compensation award exemption under section 503(a). (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a)(1)-(a)(6).) The husband's assumption that the workmen's compensation award paid out to him is in some manner outside the bounds of the statutory provision is not well taken. As stated in *Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 415, 343 N.E.2d 530, 534:

> "Where the language of an act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758; *Board of Education v. Chicago Teachers Union* (1975), 26 Ill. App. 3d 806, 810, 326 N.E.2d 158). It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. (*Certain Taxpayers, supra*, 84.) A court has no right to say that the legislature did not mean what in plain language it said and must give effect to the legislative intention regardless of the consequences. *Peo. ex rel. Oak Supply & Furniture Co. v. Department of Rev.* (1974), 23 Ill. App. 3d 1067, 1071, 320 N.E.2d 236."

The husband submits that the workmen's compensation award paid out to an injured employee during marriage should be treated as nonmarital property since, like the other exceptions in section 503(a) of the Dissolution Act, only the spouse receiving the award has any legal or equitable interest in the award. Yet, in his brief, the husband acknowledges:

> "A strictly technical reading of the Marriage and Dissolution of Marriage Act, particularly §503, indicates that all property not specified as an exception under §503(a) is marital property subject to disposition."

The husband posits, however, that, whether a workmen's compensation award is marital or nonmarital property, the provisions of the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.1-138.28) dictate that a workmen's compensation award is payable only to the injured employee and no one else, except if the employee is dead.

Suggesting that the trial court's supplemental judgment explicitly provided that the workmen's compensation proceeds be disbursed in part to the wife as a marital asset,[2] the husband asserts that such a judgment

---

[2] No direct reference is found in the supplemental judgment relating to workmen's compensation proceeds paid to or received by the husband. The supplemental judgment provides as follows:

provision is proscribed by the Illinois Workmen's Compensation Act. The husband points to section 138.21 of the Act which sets forth in pertinent part:

> "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages * * *." Ill. Rev. Stat. 1977, ch. 48, par. 138.21.

The husband then asserts the mandate of the workmen's compensation statute is clear: that an award made pursuant to the statute cannot directly or indirectly be assigned or made subject to any lien, attachment, or garnishment. Consequently, he argues, the $10,000 certificate was not marital property and was not subject to distribution by the court.

We do not agree with the interpretation of the relevant provision of the Workmen's Compensation Act as suggested by the husband. It is unnecessary to elaborate on the policy reasons incident to withholding from third parties the workmen's compensation awards paid by the employer or his agent to the injured employee. We find no equivalent circumstances here as those suggested by the husband.

Here, the lump sum workmen's compensation awards totalling approximately $8,000 net were paid to the husband in 1972, 1973 and 1974. These payments were deposited into a joint savings account held by the parties and the award moneys were commingled and used by the parties on a joint basis. The dissolution action was instituted three years after the last deposit of workmen's compensation proceeds were received by the husband. Marital expenses were paid from the joint savings account. In fact, during the course of the proceedings here and despite the injunction order entered by the trial court, the husband withdrew funds from the joint savings account and purchased a certificate of deposit in the face amount of $10,000, designating himself as owner-trustee for the benefit of a grandchild of the parties.

In view of all of the foregoing factors, we readily distinguish the authority of *East Moline Works Credit Union v. Linn* (1964), 51 Ill. App. 2d 97, 200 N.E.2d 910, cited by the husband. There the court withheld from garnishment process the workmen's compensation proceeds deposited by Clarence E. Linn into a joint savings account with his wife. The proceeds in *East Moline*, unlike the proceeds here, were never

---

"5. That the respondent is directed to repay to the petitioner *from the savings account presently in existence* the sum of debts as per the exhibit produced to the court in accordance with the verified expenditures submitted to the respondent by the petitioner, a copy of said list attached hereto and made a part hereof.

6. That the respondent is further directed to pay to the petitioner the sum of $2,000.00 *from said savings account* and that any balance that is left on deposit is to remain the sole and exclusive property of the respondent." (Emphasis added.)

commingled with other funds and used as jointly owned property. It can hardly be suggested that the "tracing of funds" that might have been available in *East Moline* was available in the instant case since the character of the award here has changed substantially.

Thus, even were we to accept the broad construction placed by the husband on the protective provisions of the Workmen's Compensation Act as it relates to third-party attacks on traceable awards, or that the awards are nonmarital property under the Dissolution Act, we nevertheless find that here, the awards are no longer traceable and, indeed, have been transmuted into marital property by their deposit, commingling and use in a joint savings account.

Our finding is supported by a recent decision in *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517. There, nonmarital cash (cash from an account acquired before the marriage) was placed into a joint savings account established after the marriage of the parties. The parties had been married four months prior to their separation. The court stated:

> "Although the point raised by this appeal has not previously been considered by an Illinois reviewing court, we find helpful decisions from other jurisdictions which have adopted a provision quite similar to Section 503 of the Illinois Marriage and Dissolution of Marriage Act. (*Daniels v. Daniels* (Mo. App. 1977), 557 S.W.2d 702; see *In re Marriage of Killgore* (Colo. App. 1975), 532 P.2d 386.) As stated in *Daniels*, 'a spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property' (557 S.W.2d at 704). Thus, the failure to properly segregate non-marital property by commingling it with marital property evinces an intent to have the former property treated as part of the marital estate (*Jaeger v. Jaeger* (Mo. App. 1977), 547 S.W.2d 207, 211.) Absent evidence to the contrary, as here, treating non-marital property in this manner will result in its transmutation to marital property.
>
> Applying the above principles, we reject petitioner's characterization that a portion of the joint savings account is non-marital property. It is true that a substantial portion of the account was established by funds contributed from each spouse, who obtained the money prior to the marriage. However, from the facts presented, the parties apparently intended, in establishing such an account shortly after their marriage, to use it for their mutual benefit and the account was treated accordingly until it was closed. (See *In re Marriage of Altman* (1974), 35 Colo. App. 183, 530 P.2d 1012.) There is no convincing evidence to suggest that the parties would treat the joint account proceeds in any other manner."

*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 516-17, 386 N.E.2d 517, 520.

In *Klingberg*, the wife had argued that the court should trace her contribution of nonmarital funds into the joint bank account and award her the portion of the joint bank account equal to her contributions. The court rejected this "source of funds" argument noting that in many domestic relations cases, the application of such a theory would result in "complicated financial determinations and potential marital discord * * *." 68 Ill. App. 3d 513, 517, 386 N.E.2d 517, 521.

The record before us discloses the parties' treatment of the workmen's compensation funds as marital property. Long after the last deposit of a workmen's compensation award was made, the funds were still being used to pay marital debts and expenses. We are compelled to conclude that even were we to assume that the workmen's compensation awards were originally of a nonmarital composition, through the process of transmutation, the awards were rendered into marital property allocable by the court under the provisions of the Dissolution Act. Ill. Rev. Stat. 1977, ch. 40, par. 503.

## II

We now turn to the contention of the husband that the award of maintenance was disproportionate in relation to the trial court's distribution of the marital property and excessive in view of the lack of evidence indicating that the wife was unable to support herself in the future. No termination date was set on the maintenance payments.

The Dissolution Act authorizes a court to grant a maintenance award to either spouse. (Ill. Rev. Stat. 1977, ch. 40, par. 504.) Specifically, section 504(b) provides:

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including:

(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

"(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

Ill. Rev. Stat. 1977, ch. 40, pars. 504(b)(1)-(b)(6).

■■ It is clear from the record that the trial court in determining the amount and duration of maintenance considered the factors set forth in section 504. The husband complains that the supplemental judgment contains no provision requiring the wife "to seek employment." We do not find that this is statutorily required. We believe an examination of the record, including the statements expressed by the trial court, amply fortifies the conclusion that the trial court considered all relevant factors and ruled accordingly.

In connection with the matter of the wife's future employment, we note with approval that the State of Oregon under a statute similar to ours ruled that:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife had foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate."

*In re Marriage of Kitson* (1974), 17 Or. App. 648, 655-56, 523 P.2d 575, 578-79, quoted with approval in *In re Marriage of Grove* (1977), 280 Or. 341, 347-48, 571 P.2d 477, 482-83, *modified* (1977), 280 Or. 769, 572 P.2d 1320. See also *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 101 Cal. Rptr. 295.

■■ The rationale in *Kitson* and *Grove* may well be applicable here. It appears from the record the wife has a limited education, has not developed or maintained, on a current basis, any particular skill, was not

employed for the past 25 years in consequence of her homemaker role, nor did she attempt to train herself for a career. The foregoing is aside from the poor state of her health and her present age. This evidence was uncontradicted. While we are not saying that the trial court must follow the *Grove* rationale and award permanent maintenance in this situation, we do not find that the court in establishing permanent maintenance here exceeded its rightful bounds in the exercise of its discretion nor did it rule contrary to the manifest weight of the evidence. *Hoffmann v. Hoffmann* (1969), 40 Ill. 2d 344, 239 N.E.2d 792; *Gauger v. Gauger* (1979), 70 Ill. App. 3d 378, 388 N.E.2d 123.

It is apparent that here, the award of permanent maintenance at the level designated was made upon the basis of circumstances disclosed by the evidence at the time of the award. (See *Jacobs v. Jacobs* (1979), ___ Va. ___, 254 S.E.2d 56.) Besides, the court in the future may modify the award of maintenance as the spouses' circumstances change, either by increasing or decreasing the amount. (Ill. Rev. Stat. 1977, ch. 40, par. 510(a). See *Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 188 N.E.2d 673; *Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 320 N.E.2d 406.) Thus, it hardly can be concluded that the husband is forever locked into meeting the maintenance payment established in the supplemental judgment under the circumstances and conditions then prevailing.

We are aware of the parties' modest holdings—the marital residence represents the single substantial resource. The property will be sold and the proceeds equally divided, at most four years from the date the supplemental judgment was entered, June 9, 1978. Granting the wife the possessory right for a four-year period was not unreasonable considering the totality of the economic circumstances of the parties. It reflects the trial court's judicious attempt to make a fair, equitable division of the marital property and award maintenance as was due and proper and consistent with established law.

The trial court's award of permanent maintenance was not disproportionate in relation to the trial court's distribution of the marital property. We find a proper blend of award and division as is defined under section 503 and section 504 of the Dissolution Act. (Ill. Rev. Stat. 1977, ch. 40, pars. 503, 504.) Finally, we add that there is ample evidence in the record of this proceeding to support the provisions of the supplemental judgment.

For all of the foregoing reasons, we affirm the trial court.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.