*In re* MARRIAGE OF LILYAN C. SIMMONS, Petitioner-Appellee, and JAMES R. SIMMONS, Respondent-Appellant.

First District (3rd Division)    No. 79-153

Opinion filed August 13, 1980.

Marshall J. Auerbach, James H. Feldman, and Kathleen J. Purcell, all of Chicago (Jenner & Block, of counsel), for appellant.

Rinella & Rinella, of Chicago (David B. Carlson, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

This is an appeal by the former husband (respondent) from the supplement to judgment for dissolution of marriage. The issues raised are: (1) Was the circuit court's order, finding that the petitioner (former wife) owned as her nonmarital property a bracelet she received as a gift from the respondent's mother and directing respondent to deliver the bracelet to the petitioner, contrary to the manifest weight of the evidence? Our answer is yes, and we reverse this portion of the supplement. (2) Did the trial court abuse its discretion in the following respects: (i) In ordering a division of marital property? The division ordered was proper except that the trial judge abused his discretion by failing to afford the respondent the privilege of purchasing the petitioner's interest as tenant in common of vacant land that was marital property. (ii) In ordering the respondent to pay the petitioner maintenance of $530 per month? We believe the maintenance award was erroneously computed. In addition some of the expenses on which the circuit court award was based were exaggerated. We modify the award of maintenance by reducing it to $248.50 per month. (iii) In ordering the respondent to pay two-thirds of the petitioner's attorneys' fees? In view of the parties' income and expenses this was not an abuse of discretion.

### The Marriage and Dissolution

The parties were married for 16 years. At the time of the hearing, he was 55, she was 49. They had no children. A judgment of dissolution of marriage was entered. Approximately 11 months later the court entered the supplement to judgment for dissolution of marriage.

### The Bracelet

The bracelet originally belonged to the respondent's mother. Petitioner testified that she received the bracelet as a gift from her mother-in-law in 1973, approximately 3 years before the complaint for dissolution of the marriage was filed. The extent of the gift is disputed.

Respondent testified that his wife was only to have the use of the bracelet. He said that while the bracelet was in his wife's possession, his mother carried insurance on it with herself as the beneficiary. A year or two before the petitioner brought her action to dissolve the marriage, she returned the bracelet to the respondent. The precise circumstances surrounding the return of the bracelet are unclear—whether the respondent requested its return by telephone or in person, and why it was returned. However, respondent testified that he in turn returned the bracelet to his mother and that it was in his mother's possession at the time of trial. This testimony was unchallenged. Petitioner asserts she received the bracelet as a gift to her from the respondent's mother. She testified that she thanked her mother-in-law for the bracelet the night that she received it.

■■ ■ It is not certain that a gift to petitioner from her husband or her husband's mother would necessarily be petitioner's nonmarital property, as she assumes. But there is no need to consider that issue. The petitioner had the burden of establishing by clear and convincing evidence that a gift was made to her. (*Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 289, 345 N.E.2d 503, 505; *Rinehart v. Rinehart* (1957), 14 Ill. App. 2d 116, 121, 143 N.E.2d 398, 401.) This burden required the petitioner to show not only delivery, but also that the delivery of the bracelet was made "with the intention of vesting the title absolutely and irrevocably in the donee." (*Rinehart*, 14 Ill. App. 2d 116, 121, 143 N.E.2d 398, 400; *In re Estate of Meyer* (1942), 317 Ill. App. 96, 101, 45 N.E.2d 495, 498.) The intent to pass title is a separate element of proof of a gift, delivery in itself not being conclusive as to whether a gift has been made, especially where the gift is contended to be nonmarital property. Before a delivery constitutes a gift, "the donor must relinquish all present and future dominion and power over the subject matter of the gift." (*Rinehart*, 114 Ill. App. 2d 116, 121, 143 N.E.2d 398, 400; *In re Estate of Meyer* (1942), 317 Ill. App. 96, 101-02, 45 N.E.2d 495, 498.) The trial court satisfied itself with respect to donative intent by applying the presumption that a gift occurs when one spouse delivers property to another.

Neither the testimony, the physical evidence nor the effect of legal presumptions can support the proposition that delivery of the bracelet was made "with the intention of vesting title absolutely and irrevocably" in the petitioner or that the petitioner's mother-in-law relinquished "all present and future dominion and power" over the bracelet. The petitioner relies on Illinois cases stating that delivery of property from one spouse to another or from parent to child raises the presumption of a gift (*Lawyer v. Lawyer* (1974), 19 Ill. App. 3d 571, 574, 312 N.E.2d 7, 10), although in the case of spouses it is not clear whether the gift becomes marital or nonmarital property. This rule, however, might not be applicable to

ancestral jewelry, which respondent cannot very well wear himself. The most obvious way for respondent to get any value out of such property short of selling it is to let his wife wear it. The inference that he or his mother intended to do more seems weak.

In any event the presumption has no relevance here for this case does not involve a gift from one spouse to another. Although the respondent delivered the bracelet to his wife, delivery was on behalf of his mother. The bracelet came from the mother rather than from the respondent. The presumption of gift on which the petitioner relies is thus not applicable in this case. Moreover, if such a presumption were appropriate here, would not the same presumption also apply to the petitioner's return of the bracelet to the respondent? In either case the presumption would not entitle the petitioner to the bracelet.

The most persuasive evidence that a gift was not made to the petitioner is that her mother-in-law insured the bracelet all the time it was in the petitioner's possession and the mother, not the petitioner, was named as the beneficiary of the policy. Had the bracelet been stolen or lost, the mother-in-law would have received reimbursement under the insurance policy and the petitioner would have received nothing.

In addition, respondent testified that the bracelet was given to his wife for her use, and not as a gift. This testimony is consistent with the petitioner's willingness to return the bracelet to the respondent, voluntarily and without question, a year or two prior to the dissolution proceedings. After returning the bracelet, the petitioner never mentioned it until she filed her action for dissolution of her marriage; her conduct is inconsistent with her position that the bracelet belonged to her.

Even assuming that the evidence could be read to show that the petitioner received the bracelet as a gift, that same evidence leads to the inevitable conclusion that she gave it back. As previously set forth, the petitioner did not object to the return of the bracelet to her mother-in-law, and there is no evidence she ever asked for or mentioned it again until she filed this action.

■ The circuit court's conclusion that the bracelet belonged to the petitioner is contrary to the manifest weight of the evidence.

The circuit court's order is also both erroneous and impractical, as a matter of law, for it commands the respondent to deliver to the petitioner a bracelet which is in his mother's possession and control. The respondent has been ordered to perform an act which he lacks the power to either perform himself or compel his mother to perform. Courts are not authorized in divorce proceedings to order disposition of property interests of third persons who are not parties to the proceeding. (See *Ylonen v. Ylonen* (1954), 2 Ill. 2d 111, 124, 117 N.E.2d 98, 105; *Chamberlin v. Chamberlin* (1969), 119 Ill. App. 2d 295, 298, 256 N.E.2d 159, 160; *Knol*

*v. Knol* (1912), 171 Ill. App. 412, 413.) This view was emphasized in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 574, 376 N.E.2d 1382, 1387, which rejected the proposition that the marital property provisions of the new Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (Ill. Rev. Stat. 1977, ch. 40, par. 503) can affect the rights of persons other than the parties to the marriage. The court stated:

> "We must presume that the 'marital property' will be distributed pursuant to section 503(b) so as to avoid the impairment of any contractual obligations owed to third parties who are not parties to the dissolution proceeding." (*Kujawinski*, 71 Ill. 2d 563, 574, 376 N.E.2d 1382, 1387.)

Deviation from this rule denies the third party a day in court. (*Blauser v. Blauser* (1958), 229 Ark. 636, 637-38, 317 S.W.2d 267, 268-69; *Walsh v. Walsh* (Tex. Civ. App. 1952), 255 S.W.2d 240, 242-43.) In any event, the respondent, without power to restore the bracelet to the petitioner, could not be held in contempt for failing to do so. We will not affirm a futile order.

### Division of Marital Property

The only marital property here was land in Wisconsin and stock in a corporation, both held in the respondent's name.

The trial judge placed the land in Wisconsin in a tenancy in common between the parties. The respondent urges that creation of a tenancy in common between the parties to a dissolution of marriage proceeding is not favored. (*Corder v. Corder* (Mo. App. 1977), 546 S.W.2d 798, 804-05; *Davis v. Davis* (Mo. App. 1976), 544 S.W.2d 259, 264.) The aim of the Marriage and Dissolution of Marriage Act is to end the discord and animosity which led to the dissolution of the marriage. A tenancy in common only encourages friction, and for that reason is discouraged. The petitioner agrees with this statement of the law, but urges that the trial judge had no reasonable alternative for disposition of the land, 200 acres of vacant swampland in Wisconsin adjoining nonmarital property owned by the respondent.

The trial judge did have an alternative. It was to determine the value of that property and then give the respondent the option to purchase the petitioner's interest at the price determined. This portion of the judgment should be reversed so that the circuit court can follow this procedure. We believe that the trial judge abused his discretion in failing to provide for a method of dissolving the petitioner's interest as a tenant in common in the vacant land.

The respondent also challenges the trial court's finding with respect to the value of a business in which he owns half the outstanding stock. The judgment ordered the respondent to transfer 20 percent of his stock to the

petitioner as her share of marital property or to pay her $6,000, the value of the stock. The respondent does not dispute that his stock was marital property. Instead he first argues that awarding the petitioner stock in the company was improper, for this is likely to continue friction between the parties. He also argues that requiring the respondent to pay $6,000 to eliminate the petitioner's interest in the company is improper because the company is in fact worthless. In view of the salary that the respondent receives from the corporation, the compensation it pays its other officers and the respondent's travel, entertainment and automobile expenses which the corporation reimbursed, we do not believe that the trial court's finding as to the value of the 20-percent interest was against the manifest weight of the evidence, even though the corporation had a large negative book value. In any event, if the stock is worthless, the petitioner is getting nothing, and her interest in a worthless corporation should be less of an irritant to the parties than if they both owned stock in a closely held corporation of some value. If the stock does have value, the respondent has the option to purchase the petitioner's interest at a nominal figure. We believe that the solution applied by the trial judge was an eminently fair way of terminating any ongoing interest of the petitioner in the respondent's business.

## MAINTENANCE

■■ Two questions must be considered on the issue of maintenance. First, how much does petitioner need? Second, how much, if any, must respondent pay? The general standards to be used in answering those questions are found in section 504 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504). The trial court must exercise discretion in responding to these questions (*In re Marriage of Gan* (1980), 83 Ill. App. 3d 265, 271, 404 N.E.2d 306; *In re Marriage of Lukas* (1980), 83 Ill. App. 3d 606, 618, 404 N.E.2d 545; *In re Marriage of Powers* (Mo. App. 1975), 527 S.W.2d 949, 954), and its determination is presumed to be correct.

Maintenance is appropriate only if the income from petitioner's property (including marital property apportioned to her) is insufficient to provide for her reasonable needs and the petitioner is unable to support herself through appropriate employment or is otherwise without sufficient income. Ill. Rev. Stat. 1977, ch. 40, par. 504; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 101, 393 N.E.2d 1065.

■■ The Marriage and Dissolution of Marriage Act does not tell us what needs are reasonable and the courts have wide latitude in considering what factors should be used in determining reasonable needs. The wide variations in the standards of living of parties coming before courts to seek maintenance in marriage dissolutions precludes a uniform objective

standard. The trial judge must decide what needs are reasonable on a case by case basis, taking into account the circumstances of the involved parties. Standard of living before and during the marriage, duration of the marriage and the social position of the spouse seeking maintenance can all be relevant, as would be special needs such as medical expenses. But the trial judge may take into account many other considerations, including but not limited to the factors listed in section 504(b). *Brueggemann v. Brueggemann* (Mo. App. 1977), 551 S.W.2d 853.

Petitioner submitted a budget to prove her reasonable needs. In it, she acknowledged gross monthly income from employment of $1,250 per month. In addition she receives $504 per month as interest or dividends from investments, for a total of $1,754 per month. Her taxes are $500 per month, leaving her with a net monthly income of $1,254.

■■ Based on petitioner's own figures, her monthly expenses are $1,682; thus her income is $428 per month short of her budget. But, in the course of the proceedings in the circuit court, petitioner increased her food expense requirement from $275 to $350 per month. She explained the increase by saying that she now eats out four or five nights a week at one of Chicago's most luxurious hotels because she does not like to eat alone at home. We do not believe this is a reasonable need because it exceeds her standard of living during her marriage. A former spouse should not be required to provide maintenance to permit his former wife to eat in restaurants instead of taking her meals in her own apartment simply because she prefers to do that when accommodating this preference substantially increases her food budget. She ate at home during the marriage. That she must now do so alone is but a necessary concomitant to the dissolution of her marriage.

Likewise, petitioner increased her budget for transportation from $55 to $70 per month, explaining that she now takes a cab to work. Taxicab transportation is not needed in this case; therefore, the amount required by petitioner for transportation has been overstated by $15 per month. Also, petitioner claimed that her laundry, cleaning and storage expense was $100 per month. The respondent, on the other hand, testified without contradiction that during the period of their marriage, this expense for both parties was only $70 per month. Even assuming that the entire laundry and cleaning expense during her marriage was attributable to petitioner, based on the figures submitted by the respondent it appears that the petitioner has overstated this item of expense by at least $30 per month. We believe this figure should be reduced from $100 to $70 per month. Finally, the petitioner conceded that the listed cost of her hospitalization insurance was $6 per month more than the actual expense.

Thus, by deducting from petitioner's stated expenses of $1,682 per

month the following inflated items we conclude that petitioner's expenses are $1,556 per month, $302 per month more than her income:

| | |
|---|---|
| Reduction in Food Budget | $75 per month |
| Reduction in Transportation budget | $15 per month |
| Reduction in hospitalization insurance expense | $ 6 per month |
| Reduction in laundry, cleaning and storage budget | $30 per month |
| Total | $126 per month |

But respondent challenges the reasonableness of even these needs. He argues that because petitioner is steadily employed at a substantial salary and seldom, if at all, during the marriage, gave up educational or employment opportunities to serve the marriage, no maintenance is appropriate. He points to the growing stature of women in the marketplace and their growing equality in earning power. His argument, reduced to its starkest form, is that where the spouse did not suffer from the marriage, her reasonable needs should be measured by the amount of money she can earn. Only where her employment level is less than it might have been without the marriage would maintenance be appropriate.

There is some basis for respondent's argument. The Marriage and Dissolution of Marriage Act, whenever possible, seeks to cut off all entanglements between the parties so that they may each go their separate ways in life. But, at the same time, the Marriage and Dissolution of Marriage Act was not meant to change the test for the propriety of maintenance by eliminating consideration of the style of living to which a spouse has become accustomed. Reasonable needs are still to be measured by the standard of living the party seeking maintenance previously enjoyed. In *In re Marriage of Rosan* (1972), 24 Cal. App. 3d 885, 897, 101 Cal. Rptr. 295, 304, the court characterized as "mistaken" the notion that the enactment of the California Family Law Act, containing a provision on maintenance similar to section 504 of the Illinois Marriage Act, constituted a legislative mandate "to relieve husbands of any long, continuing obligation for spousal support." And as we read *In re Marriage of Kitson* (1974), 17 Or. App. 648, 655-56, 523 P.2d 575, 578-79, approved in *In re Marriage of Lukas* (1980), 83 Ill. App. 3d 606, 404 N.E.2d 545, and *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 844, 398 N.E.2d 868, the law contemplates a permanent maintenance award where the wife has employment skills but there is a discrepancy between her probable future income and an income which would provide the standard of living she enjoyed while married. See *In re Marriage of Grove* (1977), 280 Or.

341, 348-49, 571 P.2d 477, 483; *Casper v. Casper* (Ky. App. 1974), 510 S.W.2d 253.

■■ Even while holding a responsible position in a large bank earning a salary many would regard as munificent, this former wife cannot match the earning power of this former husband. We repeat that what is reasonable in one case may not be reasonable in another; maintenance is appropriate here because even petitioner's substantial earning power was not adequate to make her self-sufficient when measured against her reasonable needs. (Compare *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323, where wife's income alone comfortably satisfied her needs and maintenance was denied; *In re Marriage of Stegbauer* (1980), 84 Ill. App. 3d 83, 404 N.E.2d 1140, where wife earned one-third of what husband did, needed more money to meet her former standard of living and maintenance was awarded.) A former wife unable to meet her own needs should not be expected to shift for herself without assistance from her former spouse, if he is in a position to provide it, simply because society is finally willing to recognize that women are entitled to privileges equal to those enjoyed by men.

Having determined by an examination of petitioner's reasonable needs that maintenance was appropriate, we now turn to the question of how much of petitioner's monthly shortfall of $302 respondent must pay. Under section 504(b), the award is to be in an amount "as the court deems just" after considering all relevant factors including the duration of the marriage (section 504(b)(4)), the age and physical and emotional condition of the parties (section 504(b)(5)), the standard of living established during the marriage (section 504(b)(3)), the ability of the paying spouse to meet his own needs while providing maintenance (section 504(b)(6)), the financial resources of the spouse seeking maintenance (section 504(b)(1)) and the ability of that spouse to meet her own needs independently (section 504(b)(1)).

Except where the duration of the marriage, the health of the parties or the ability of the paying spouse otherwise indicates, section 504(b) requires that the award be sufficient to provide the spouse seeking maintenance with the standard of living established during the marriage. (*In re Marriage of Thornton* (1st Dist., Docket No. 78-1092, June 26, 1980), ___ Ill. App. 3d ___, ___ N.E.2d ___.) The health of the parties was generally good, though respondent did receive some treatment for diabetes. Petitioner's standard of living was discussed above. The bearing of the length of the marriage on our decision is considered below. Petitioner needs $302 per month in addition to her own financial resources and her salary to satisfy her reasonable needs.

Because respondent is unable to provide that entire amount, section 504(b)(6) becomes critical. Respondent acknowledged a net income of

$1,862 per month. He claimed expenses of $1,842 per month. Like petitioner, respondent overstated his expense items—a reduction in his $200 monthly vacation budget is appropriate to bring him into line with petitioner's claimed vacation expense of $100 per month. In addition, he testified that his monthly $150 club membership expense was part personal and part business, and part of these expenses were paid by his business. This item should be cut in half by reducing it $75 per month. After these corrections, respondent's income is $195 more per month than his reasonable needs, still $107 short of petitioner's yet unsatisfied needs.

In some failed marriages, the parties are fortunate enough to have resources adequate to satisfy both of their reasonable needs in full. The spouse seeking maintenance would therefore be awarded the whole difference between her resources and her reasonable needs. But the Simmonses, like most divorced couples, do not have enough to go around. Living apart costs most couples more than living together. The court is unable to provide both parties with the standard of living they enjoyed during marriage; one or both have to take a cut. The court must apportion the deficit. Once respondent's $195 surplus is applied to the petitioner, we must balance the parties' claims to their remaining incomes.

In other circumstances we might rule that the earner of income has a superior claim to it, but we leave those considerations to another case. In this case, the length of the marriage and age of the parties gives them equal rights to satisfy their reasonable needs out of the available income. And because the reasonable needs of the parties in this case are so nearly equal (petitioner's $1,556 v. respondent's $1,667), we believe that the simplest "just" disposition is for them to share equally the cost of the failure of the marriage. Petitioner is thus entitled to an additional award of $53.50 per month from the respondent. This leaves each party $53.50 short of reasonable needs.

The total award of maintenance, then, should have been $248.50 per month. The trial court's award of maintenance of $530 per month was an abuse of discretion. Accordingly, it should be vacated and we direct that an award calculated in the manner set forth above be substituted for it.

### ATTORNEYS' FEES

Finally, the respondent challenges the portion of the order requiring him to pay a portion of the petitioner's attorneys' fees. He contends that the petitioner has bank deposits and stock worth about $90,000 and that therefore she is able to pay her own fees. Respondent points to several Illinois decisions holding that the party seeking attorneys' fees from his former spouse must show financial inability to pay his own fees. Mrs. Simmons has the ability to pay the entire amount of her fees out of her

bank accounts and stock. However, as the Marriage and Dissolution of Marriage Act suggests, we have taken the income from these assets into account in determining the extent to which she is able to meet her own needs. If her assets are depleted by requiring her to use them to pay the entire amount of her fees instead of only a portion, she obviously will be less able to provide for her own needs. To meet her needs, we would then have to increase the monthly maintenance to be provided by the respondent. In view of the approach to maintenance we have taken in this case, petitioner would simply be trading investment income for maintenance, more or less dollar for dollar, and this would be contrary to the Marriage and Dissolution of Marriage Act's goal of relying as little as possible on maintenance.

While recognizing the validity of the rule that in a matrimonial proceeding each party is ordinarily responsible for his own attorneys' fees, we approve the solution adopted by the trial court which will not require increased maintenance payments by respondent. We conclude that under the circumstances of this case the circuit court's order that respondent pay two-thirds of petitioner's attorneys' fees was not an abuse of discretion. That portion of the supplement to judgment is affirmed.

Affirmed in part, modified in part, reversed in part and remanded for further proceedings consistent with the views expressed herein.

McGILLICUDDY, P. J., and RIZZI, J., concur.