This case presents a significant issue of first impression that the majority has failed to address. The husband's brief points out that other jurisdictions have developed three different methods for determining whether personal injury awards constitute marital property, namely: (1) to treat all personal injury settlements as marital property if they are acquired during the marriage and are not specifically excepted by statute, see e.g., Heilman v. Heilman, 95 Mich. App. 728,291 N.W.2d 183 (1980); Lukas v. Lukas, 83 Ill. App.3d 606, 39 Ill.Dec. 161, 404 N.E.2d 545 (1980); (2) to treat all personal injury settlements as nonmarital property, see e.g., Unkle v.Unkle, 305 Md. 587, 505 A.2d 849 (1986); Izatt v. Izatt627 P.2d 49 (Utah 1981); and (3) to treat part of the settlement proceeds as marital property and part as nonmarital property, depending upon the purpose of the personal injury award, see e.g., Everhardt v. Everhardt, 77 Ohio App.3d 396,602 N.E.2d 701 (1991). Under the third method, the part of the award that is deemed compensation for pain and suffering, for example, might be considered the separate estate *Page 610 
of the recipient spouse, while the part of the award that represents future lost wages might be considered marital property.
I dissent because I favor the first method — that all property acquired during the marriage is marital property unless specifically excluded by statute. Without identifying this method, it is clear that the trial court used this method in awarding to the wife a portion of the proceeds from the husband's personal injury award. I would affirm the judgment of the trial court. The majority, without acknowledgment, adopts the second method — that all personal injury settlements are nonmarital property.
The portion of § 30-2-51 in the majority's opinion that is not underlined shows the legislative intent to authorize, if needed, a property settlement from marital assets. That portion of § 30-2-51 that is underlined does not specifically exclude the property at issue here because the husband's personal injury settlement was neither property acquired prior to the marriage nor property acquired by inheritance or gift.
The intent of § 30-2-51 is to exclude a spouse's separate estate from division upon divorce, unless those assets have been used to support the family during the marriage. The initial payment of $360,000 and the monthly payments from the annuity and Social Security were used for the support of this family.
The fact that the husband is to receive settlement payments in the future is not dispositive here. A husband's retirement benefits, also to be received in the future, are available for division as part of the marital estate. See Ex parte Vaughn,634 So.2d 533 (Ala. 1993).
In Jackson v. Jackson, 656 So.2d 875 (Ala.Civ.App. 1995), this court held that for purposes of equitable distribution of property upon divorce, "a benefit right, whether or not it is vested, constitutes an asset that should be shared and, therefore, subject to division upon divorce." Jackson, 656 So.2d at 877. In the instant case, the husband's right to receive the future payments from the settlement agreement has been agreed upon and was done so during the marriage.
The second marriage lasted eight years and was terminated only because of the husband's infidelity. After the wife discovered the husband's affair, they tried, several times to salvage the marriage. However, when the husband gave a son's car to the girlfriend, the wife testified: "I told him if she had that car, then this marriage was over." She also testified that she never wanted the marriage to end, but did not have a choice. A division of marital assets need not be equal, but only equitable. A close analysis of a trial court's division of the total family income each month, the proceeds from the marital home upon its sale, and the future balloon payments show that the division was equitable and carefully tailored to the particular facts in this case.
 Monthly Income Husband Wife
 $2,300 annuity $ 946 salary $ 984 Social Security $ 514 Social Security ------ $3,284 $1,024 mortgage -1,024 mortgage payment ------ ------ $2,260 $2,484
 Monthly Income Beginning November 17, 2001[1] Husband Wife
 $2,300 annuity $ 946 salary $ 984 Social Security ------ $3,284
 Balloon Payments and House Husband Year Wife
 $ 40,000 March 1998 $ 20,000 $ 31,250 March 2001 (house) $ 93,750 $120,000 March 2003 $ 30,000 $160,000 March 2008 $ 40,000 -------- -------- $351,250 $183,750
[1] The marital home must be sold when the child reaches 21 in the year 2001, which will eliminate the mortgage payment. It is not known when the monthly Social Security payments to the wife for the child will terminate.
The above analysis shows that until their child reaches 21 years of age, the husband will receive nearly as much from their total monthly income as is received by the wifeand child. The wife was awarded approximately one-third and the husband two-thirds of the proceeds from the sale of the house and balloon payments. The husband will receive monthly payments of $2,300 for life or at least 20 years. Thus, if the husband lives until February 1, 2008, he will have *Page 611 
received $172,500 from the annuity and $73,800 from Social Security for a total of $246,300 after the last mortgage payment on November 1, 2001. The trial court did not abuse its discretion in its award to the wife.