**Estate of Marshall Field, Deceased.**
**Edward I. Farley and George B. Young, Executors of the Will of Marshall Field, Petitioners, v. Lynne T. Field, et al., Respondents.**
**Appeal of Marshall Field III, Respondent-Appellant.**

Gen. No. 52,555.

First District, First Division.

September 16, 1968.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, Cravath, Swaine & Moore, of New York City (Don

H. Reuben, John E. Angle, and Michael W. Coffield, of counsel), for appellant.

Wilson & McIlvaine, of Chicago (Clarence E. Fox and Vernon T. Squires, of counsel), for petitioners, Edward I. Farley and George B. Young, executors of the will of Marshall Field.

Gregory A. Gelderman, of Chicago, guardian ad litem for respondents-appellees.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

On January 6, 1967, Edward I. Farley and George B. Young, Executors of the Estate of Marshall Field, deceased, filed a supplementary petition in the Probate Division of the Circuit Court of Cook County, seeking to cancel a $90,000 demand note executed by the decedent's adult son, Marshall Field III, made payable to his father. Named as respondents by the executors, along with Marshall Field III, were Lynne T. Field, Marshall Field's widow, Joanne Field, Marshall Field's daughter-in-law, and the decedent's three minor children and one minor grandchild.

In their petition, the Executors stated their belief that under the law of Illinois, the decedent had effectively made an inter vivos gift of the aforementioned note to Marshall Field III. Therefore, they requested the Court to find that the note was not part of the decedent's estate, and accordingly they prayed that the Court authorize them to cancel the note or deliver it to Marshall Field III. Lynne T. Field filed an answer to the petition in which she neither admitted nor denied the substantive pertinent allegations contained therein and requested that an order be entered declaring the note to be a part of the decedent's estate. A guardian ad litem appointed for the

237

minor respondents filed an answer to the petition in which he asked for strict proof of the allegations contained in the petition and submitted the interests and the welfare of the minors to the care of the Court.

The trial judge, after a hearing in which evidence was introduced, found that the decedent had not made a valid inter vivos gift of the note because said note had not been delivered to an agent or a trustee for the donee, Marshall Field III, during the lifetime of the decedent, and therefore, the note was part of Marshall Field's estate. The petition was dismissed with prejudice, and the judgment order further recited that "no good cause exists to delay the appeal or enforcement of this order." An appeal was taken from the order by the executors and by Marshall Field III. The guardian ad litem has also appeared before us.

There is no dispute as to the essential facts introduced in evidence. Marshall Field III (hereinafter referred to as respondent-appellant) is the son of the decedent, Marshall Field, and his former wife, Joanne Bass Bross. In August of 1964, the respondent-appellant, who was about to be married, contracted to purchase a home in Peterborough, New Hampshire. Lacking adequate funds to complete the purchase he wrote his father, who was then honeymooning in Europe, and asked for a loan of $90,000. Thereafter, on August 14, 1964, the decedent cabled Edward I. Farley, a member of the board of directors of Field Enterprises, Inc., "Please loan Marshall $90,000 on a non-interest bearing demand note for purchase of land in New Hampshire. . . ." Farley proceeded to wire the respondent-appellant: "Dad okayed funds for Peterborough property. Advise where funds needed and what, if anything further, should be done from here. Am considering other financial matters in your letter. Best wishes, Edward Farley." Edward J. Burns, an accountant for Field Enterprises, prepared the note in question, dated March 8, 1965, and after the respondent-

appellant signed it, Burns deposited same in the decedent's deposit box at the First National Bank of Chicago.

The decedent spent a long week end with his son and daughter-in-law at their new home in Peterborough in July, 1965, and visited them again that Labor Day weekend. On Sunday, September 5th, the respondent-appellant and his wife celebrated their first wedding anniversary, and on Monday, Mrs. Bross held a picnic lunch in their honor at her home in Peterborough. After lunch the decedent and Mrs. Bross talked privately and he told her that he had given the Peterborough home to the respondent-appellant and his wife as a gift for their anniversary. Mrs. Bross testified that it was common knowledge that the decedent made a gift of the home to the respondent-appellant.

Edward I. Farley, who had known the decedent for about forty years, testified that he managed with the assistance of Edward Burns and a Mr. Carroll, many of the decedent's personal financial investment tax affairs, and that he also was the trustee on several of the trusts that the decedent had set up for his children. Farley also possessed authority to draw on the decedent's checking accounts. Farley further testified that on August 18, 1965, he had dinner with the decedent in New York to discuss Mr. Field's financial affairs. At that time the decedent told Farley that he wanted to cancel the note in question. After Farley informed the decedent of the gift tax consequences of cancelling the note, Mr. Field stated that he wanted to do it anyway because he wanted to make the gift of the note to the respondent-appellant and his wife. The matter was not finally resolved until September 16th, when the decedent told Farley that he had decided definitely that he wanted the note cancelled in spite of the gift tax consequences of such a decision. Immediately thereafter, Farley phoned Edward Burns and informed the latter about Mr. Field's

239

decision. Farley told Burns to remove the note from the decedent's box at the bank as quickly as possible. Although both Mr. Farley and the decedent were authorized to enter the latter's safety deposit box, only Mr. Burns ever removed anything from the box during the decedent's lifetime. Before Burns could carry out Farley's order, the decedent died unexpectedly on September 18th.

The respondent-appellant contends, on appeal, that the judgment of the trial court should be reversed because the decedent made a valid inter vivos gift of the note to him in that the note was delivered to Farley and Burns as agents or trustees on his behalf. The guardian ad litem contends that we should affirm the judgment because the note was never delivered to respondent-appellant, and therefore, cannot be considered to be the subject matter of a valid inter vivos gift. In this regard, he further contends that the note was never delivered to either Farley or Burns as agents or trustees for the respondent.

██ As we view the undisputed facts presented by the record before us, the resolution of the issues raised in this appeal depends upon whether or not the note in question was delivered by the decedent donor to Farley and Burns as agents or trustees for his son, the respondent-appellant. As the Court stated In re Estate of Meyer, 317 Ill App 96, 45 NE2d 495 at page 102:

> Where delivery is made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto as disclosed by the evidence.

In the case at bar, the decedent's intention to make a gift of the house in Peterborough to his son, is clearly demonstrated by his statement to Mrs. Bross that such was his desire and by his instructions to Farley to cancel the note in question. While we agree with the guardian ad litem that intent alone in the absence of other factors required by law will not constitute a valid gift inter vivos, still the donor's intent is a material factor in determining the role played in the instant case by Farley and Burns. Furthermore, the decedent was motivated not by considerations of business in deciding to make a gift of the Peterborough property to his son (as demonstrated by his knowledge of the negative tax implications of his decision), but rather it is clear to us that his motivation in making the gift and in attempting to cancel the note was a feeling of affection for his son. In such a case, equitable considerations lead us to attempt to carry out the donor's intentions. Seavey v. Seavey, 30 Ill App 625.

We are satisfied from the evidence that Burns and Farley acted as agents on behalf of both the decedent and the respondent-appellant. Evidence was introduced to the effect that the respondent-appellant relied upon Burns and Farley to handle many of his financial transactions, as did his father. Indeed, the financial transactions surrounding the execution of the note were handled by Burns and Farley on behalf of both parties. Therefore, we are convinced that when the decedent instructed Farley to cancel the note he made Farley not only an agent to represent his own interests, but also an agent to represent the interests of his son. Under these circumstances, the death of Marshall Field before the note could be cancelled did not terminate the agency he had created on his son's behalf, and therefore, Burns possessed the authority to cancel the note after the decedent's demise. Andrews v. Votaw, 240 Ill App 311.

■ Furthermore, we have concluded that Messrs. Farley and Burns were made trustees by the decedent on behalf of his son for the purpose of cancelling the $90,000 unsecured note so that he would carry out his intention of making an anniversary gift of the Peterborough property; and we have further concluded that the decedent made an effective delivery of the trust res by renouncing all control over the note. The evidence disclosed that most of the decedent's financial affairs were handled by Farley and Burns. Farley was trustee on several trusts which had been set up by the decedent. Burns alone was responsible for entering the decedent's safety deposit box, which neither Farley nor the decedent entered during the latter's lifetime. These facts and circumstances reveal that the relationship between the decedent and Farley and Burns was one of the highest trust, and that he relied on them to carry out his wishes regarding his personal property. It is apparent that the decedent, after his conversation with Farley, had done all that he could to see that the note would be cancelled. He had parted with ownership and control over the note. The ministerial act of actually removing the note and cancelling it was not dependent upon the decedent's control, but rather upon the timing of Burns in going to the bank. After his conversation with Farley, the decedent had effectively parted with legal title to the note, and therefore, the note cannot properly be considered an asset of his estate.

■ The guardian ad litem argues, however, that since neither Burns nor Farley ever came into actual physical possession of the note prior to the decedent's death a valid trust was not created. We cannot agree. The decedent created the trust when he directed Farley to cancel the note on behalf of his son, thereby relinquishing all control over the instrument. See In re Estate of Trapp, 269 Ill App 269. The validity of the trust under the circumstances here did not depend upon the two trustees coming into physical possession of the trust res.

242

Otis v. Beckwith, 49 Ill App 121; Home for Destitute Cripple Children v. Boomer, 308 Ill App 170, 31 NE2d 312.

■ We are convinced that under the criteria set forth in the Meyer case, the evidence in the case at bar shows a situation where family affection actuated a donor to part with title to an obligation owed him by his son by placing said obligation in trust on his son's behalf and by instructing a trustee (with whose performance of ministerial business functions he never interfered) to see to it that the obligation be cancelled. We hold that Marshall Field, deceased, made a valid inter vivos gift to Marshall Field III.

The judgment of the Circuit Court, County Department, Probate Division is therefore reversed with directions to cancel the note of $90,000 and deliver same to Marshall Field III.

Judgment reversed with directions.

ADESKO and MURPHY, JJ., concur.