JOHN W. HERRON, SR., Plaintiff-Appellee, v. PATRICIA S. UNDERWOOD *et al.*, Defendants-Appellants and Cross-Appellees (Lucy Lee Hilliard, Defendant-Appellee and Cross-Appellant; Anna Fay Bush, Indiv. and as Trustee, *et al.*, Defendants-Appellees).

Fifth District No.5—85—0748

Opinion filed January 29, 1987.

David C. Nelson and Janett S. Winter-Black, both of Dilsaver, Nelson & Ryan, of Mattoon, for appellant Harriett E. Herron.

Franklin E. Dove, of Dove & Dove, of Shelbyville, for other appellants.

Ralph D. Glenn and James R. Glenn, both of Glenn & Logue, of Mattoon, for appellee John W. Herron, Sr.

Dale A. Cini, of Ryan, Grabb, Cini & Bennett, of Mattoon, for appellee Lucy Lee Hilliard.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, John William Herron, Sr., son of the decedent, Paul K. Herron, filed the instant action for declaratory judgment seeking construction of various documents, including three deeds of conveyance executed by the decedent during his lifetime and placed with a third party to be given to the grantees subsequent to the decedent's death, an *inter vivos* trust agreement and amendment executed by the decedent, and an antenuptial agreement executed by the decedent and his third spouse. The plaintiff, an heir of the decedent, was a grantee named in one of the deeds of conveyance. The trial court found that there had been a valid delivery of the three deeds executed by the decedent so that the real estate subject to the deeds did not become a part of the decedent's estate. On appeal the defendants-appellants, also heirs of the decedent, contend (1) that the trial court erred in allowing testimony concerning delivery of the deeds by the decedent in violation of the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201) and (2) that the testimony of events surrounding the purported delivery of the deeds by the decedent failed to show that the decedent had parted with all dominion and control over the deeds so as to constitute a valid delivery of the deeds. We affirm.

The decedent, Paul K. Herron, was married three times during his lifetime. Four children were born of his first marriage: John William Herron, Sr., Lucy Lee Hilliard, Paul David Herron, and a child who died in infancy prior to the decedent's death. Paul David Herron also predeceased the decedent, leaving five descendants, defendants-appellants Patricia Underwood, Tami Varnam, Lori Hewett, Sherri Herron, and David Herron (hereafter referred to as the

defendants Underwood).

Paul K. Herron remarried after the death of his first wife. During that second marriage, the decedent executed a "Living Trust Agreement," dated September 30, 1977, and nominated his sister, Anna Fay Herron Bush, as trustee. This agreement, which stated that the trust was to be considered an irrevocable trust, provided in part that the trustee was to manage, control, and operate all property transferred to the trustee, real and personal, and was to distribute the income of the trust to the grantor, Paul K. Herron, in such amounts as should be determined by the trustee and the grantor of the trust. The trust agreement further provided that, upon the grantor's death, the trust would terminate and that, after payment of any expenses in connection with the trust and the funeral expenses of the grantor, the property would be distributed to the grantor's children, John William Herron, Sr., Lucy Lee Hilliard, and Paul David Herron.

In conjunction with the execution of the "Living Trust Agreement," Paul K. Herron executed a deed, also dated September 30, 1977, wherein he conveyed to Anna Fay Bush, as trustee, three tracts of property located in Shelby County, Illinois. One of these tracts consisted of residential property in the city of Windsor, Illinois, while the other two tracts consisted of farmland outside the city of Windsor.

The marriage of Paul K. Herron and his second wife was dissolved on December 15, 1981. Shortly thereafter, on March 17, 1982, the decedent caused three separate deeds to be prepared. Anna Fay Bush, as trustee, was the grantor in each deed, and Paul K. Herron was the grantee. The three deeds conveyed the property formerly conveyed to the trust by the deed of September 30, 1977, back to the decedent. After the three deeds were prepared, the decedent took them to his sister, who executed them, and he then caused them to be recorded in Shelby County, Illinois. The only asset remaining in the trust after this transaction was some Effingham Equity stock.

On March 26, 1982, Paul K. Herron again returned to the residence of Anna Fay Bush and on this occasion delivered to her an amendment to the "Living Trust Agreement" dated September 30, 1977. This instrument made two amendments to the "Living Trust Agreement." The first amendment provided that in the event of the death or inability of Anna Fay Bush to act as trustee, her daughter, Sarah Ann Bush, would act as successor trustee. The second amendment provided that upon the death of the grantor, Paul K. Herron,

and after the payment of expenses in connection with the trust and the funeral expenses of the grantor, the trust would terminate and all trust property would be

"invested in John William Herron, Sr., for and during the term of his natural life, and upon his death, the property remaining in said Living Trust shall then pass to and become the property of Sarah Ann Bush."

Paul K. Herron, Anna Fay Bush, and Sarah Ann Bush executed the instrument and then caused it to be recorded in Shelby County, Illinois, on March 29, 1982.

On March 29, 1982, the decedent delivered three deeds, each dated March 26, 1982, to Anna Fay Bush. In each deed Paul K. Herron was the grantor. The first deed conveyed one of the tracts of farmland to Paul K. Herron's son, John William Herron, Sr., for and during the term of his natural life, and at his death to Paul K. Herron's grandson, John William Herron, Jr. The second deed conveyed the other tract of farmland to Paul K. Herron's daughter, Lucy Lee Hilliard, and the third deed conveyed the residential property in Windsor to Lucy Lee Hilliard. Paul K. Herron instructed Anna Fay Bush that the three deeds were to be delivered to his two children at his death. He gave Anna Fay Bush no further instructions regarding these deeds and never asked for their return.

Several months later Anna Fay Bush executed an oil-and-gas lease upon land that she owned. She arranged for her brother to execute a similar lease with regard to the adjoining tract of farmland that he had conveyed to Lucy Lee Hilliard, and the decedent executed such a lease on August 5, 1982.

A year later, in August 1983, Paul K. Herron and Harriett Krummel, who was to become the decedent's third wife, met with an attorney, Stephen K. Wood, to discuss the preparation of an antenuptial agreement. At Mr. Wood's request, each of the parties delivered to him a schedule listing their respective assets. On his schedule Paul K. Herron listed each of the three tracts of property that were the subject of the deeds given to Anna Fay Bush. At the attorney's suggestion an appraisal was made as to each of the three tracts. The decedent took the appraiser, Robert Pearce, to each of the three tracts for his examination, and Mr. Pearce submitted a written appraisal to Mr. Wood to be used in the preparation of the antenuptial agreement.

On August 25, 1983, a day or two before their marriage, Paul K. Herron and Harriett Krummel executed the antenuptial agreement. By this agreement both parties waived certain statutory rights to

the property of the other in the event of his or her death. The agreement further provided, in pertinent part:

"11.) In case of the death of husband prior to wife's death, husband has expressed his desire to provide for the comfortable support and maintenance of wife from the assets of his estate. Husband specifically agrees that should he pre-decease wife, then she shall receive all of the net income from all of his real estate in payments at least quarterly during the remainder of her life, or until she remarries, whichever event shall happen first. It is the present intention of husband to draw a will providing for the administration of said provisions for wife."

Paul K. Herron died intestate on April 8, 1984. After his death Anna Fay Bush attempted to pay funeral expenses and debts of the estate pursuant to the terms of the trust, but her efforts were thwarted by the appointment of an administrator of the estate. She then delivered the three deeds in her possession to the decedent's children, John William Herron, Sr., and Lucy Lee Hilliard, and the deeds were subsequently recorded in Shelby County, Illinois.

On July 3, 1984, plaintiff, John William Herron, Sr., filed suit for declaratory judgment, seeking construction of the deeds of March 26, 1982, to John William Herron, Sr., and Lucy Lee Hilliard, as well as the "Living Trust Agreement" and amendment thereto and the antenuptial agreement between the decedent and Harriett Krummel Herron. Names as defendants in the suit were the five defendants Underwood; Lucy Lee Hilliard; Anna Fay Bush, individually and as trustee of the "Living Trust Agreement"; Sarah Ann Bush; John William Herron, Jr.; and Mac Sexson, administrator of the estate of Paul K. Herron. While count I of the plaintiff's complaint asserted that the deeds had been delivered to Anna Fay Bush as trustee under the "Living Trust Agreement" and passed to the grantees named in the deeds pursuant to the trust, count II of the amended complaint alleged only that the decedent had delivered the deeds to Anna Fay Bush with instructions to deliver them to the grantees at his death. The defendants Underwood filed a responsive pleading, asserting that the deeds had not been properly delivered by the decedent during his lifetime but had remained in his dominion and control and that the three parcels of real estate thus became assets of the decedent's estate at his death. The decedent's surviving spouse, defendant Harriett Herron, joined in this response but prayed in the alternative that if the deeds were found to be valid, the antenuptial agreement be set aside because it was based on Paul K. Herron's in-

accurate representation of ownership of the real estate in question.

At trial on the plaintiff's complaint, Anna Fay Bush testified over the defendants' objections based on the Dead Man's Act regarding the decedent's actions in delivering the three deeds to her on March 29, 1982. She testified that the decedent, in giving the three deeds to her, had stated that "these deeds were to be given to his children at his death and to be filed immediately, as soon as possible." He had said nothing further and had given her no written instructions regarding the deeds. From the time the deeds came into her possession, Anna Fay Bush had kept them in a metal safety deposit box at her home, and the decedent had at no time asked for their return. After the decedent's death, she had given the deeds to his children as she had been instructed to do.

On cross-examination defense counsel asked Anna Fay Bush to relate the words actually used by the decedent in delivering the deeds:

"Q. What were his words?

A. Deliver the deeds to John and Lucy at my death.

Q. Is that all he said?

A. Yes. Yes."

When questioned as to whether the deeds were delivered to her as a part of the trust, Anna Fay Bush responded:

"A. Yes, they were delivered to me.

Q. As trustee of the trust?

A. Yes, sir, I would presume."

The questioning continued:

"Q. And I think you testified earlier that it was your understanding that you were to deliver those deeds to the children named therein and grantees [sic] after Paul's death, after you had taken care of payment of the debts and obligations of his estate. Is that correct?

A. Since it did not happen, I am not sure. I mean everything was so fouled up by that time I am not sure what—

Q. That was your understanding as to what you were to do with them?

A. When he died, they were to be given to the children. There was no condition. After he died, they were to be given to the children."

Upon further questioning Anna Fay Bush added that she had assumed that the deeds, which were given to her after the trust was amended in March 1982, had taken precedence over the paragraph of the trust agreement providing for distribution of the real estate

as part of the trust assets.

Regarding her actions in managing the property that was originally a part of the trust of September 30, 1977, Anna Fay Bush testified that she had kept records "of crops and expenses" and "money that [the decedent] had in the bank," as well as tax receipts that were sent to her as trustee. Her brother had continued to pay all bills and taxes out of his own account, and she had never opened a fiduciary checking account as allowed by the trust agreement or filed any fiduciary income tax returns. She had not consulted with the farm tenants as to what crops were to be planted or when they were to be planted.

Anna Fay Bush testified that in August 1982, following conveyance of the subject property from the trust back to the decedent and the decedent's subsequent execution and delivery of the deeds of March 29, 1982, to Anna Fay Bush, the decedent had executed an oil-and-gas lease on some of the farmland covered by the deeds that was adjacent to her own. She had decided to lease her own land and had "thought [the decedent] would *** appreciate the opportunity" to do likewise. The check for execution of the lease had been made out to the decedent directly, as "there was no reason for it to be to [Anna Fay Bush] and back to [the decedent] as part of a trust."

In other pertinent testimony Stephen K. Wood, the attorney who had prepared the antenuptial agreement between the decedent and Harriett Krummel Herron, testified that in preparing the agreement he had asked each of the parties to furnish him with a list of their respective assets. The decedent's list included an entry, "Trust Fund to or has Expired [*sic*] (Can Omit)." Mr. Wood had questioned the decedent about this trust

> "and was told essentially as what is stated here on paper, that there was a trust that had—was no longer any good or it had expired."

At the conclusion of the evidence and argument of counsel, the trial court entered judgment finding that the three deeds from the decedent to John William Herron, Sr., and Lucy Lee Hilliard had been effectively delivered by the decedent during his lifetime so as to vest title to the subject real estate in them. The court made a preliminary finding that "the witness, Anna Fay Bush, is not an adverse or interested party to this proceeding and her testimony is not barred by the Illinois Evidence or Dead Man's Act." The court then specifically found:

> "The evidence is clear and convincing that Paul K. Herron delivered [the three deeds of March 26, 1982] to Anna Fay

Bush, relinquishing all control over said deeds, with the directions that Anna Fay Bush deliver these deeds to John W. Herron, Sr.[,] and Lucy Lee Hilliard upon his death. Anna Fay Bush did so deliver said deeds. The grantor, Paul K. Herron, relinquished all control and dominion over the deeds. There is no showing that at the time of delivery of the deeds to Anna Fay Bush, that [sic] the grantor intended anything other than that he intended [sic] to relinquish all right, title and interest in the properties. He never made any effort to recall the deeds, or indicated that he intended to do so. He permitted the fulfillment of the event for final delivery of possession of the deeds to his children, to-wit: his death. The fact that the grantor thereafter listed the same three tracts of real estate in a disclosure of his property ownership for purposes of an ante-nuptial agreement does not show the deeds were equivocally delivered to Anna Fay Bush."

The court concluded:

"Paul K. Herron did have a lifetime right to the use and profits of said real estate[,] [but the] three tracts of real estate were conveyed to John W. Herron, Sr., with John W. Herron, Jr.[,] as remainderman, and to Lucy Lee Hilliard, respectively[,] and are not assets of the estate of Paul K. Herron, deceased."

On appeal from this judgment, appellants, the defendants Underwood and Harriett Herron, contend initially that the trial court erred in allowing Anna Fay Bush to testify concerning her conversations with the decedent in violation of the Dead Man's Act. Section 8—201 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—201), commonly known as the Dead Man's Act, provides in pertinent part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person *** no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***."

The appellants assert that Anna Fay Bush, who was named as a party-defendant by the plaintiff in his action for declaratory judgment, was an adverse party within the meaning of the statute. They observe that if it were found that there was not a valid delivery of the deeds in question, the real estate would become an asset of the decedent's estate and subject to administration by the administrator.

Thus, they contend, the testimony of Anna Fay Bush was adverse to the position of the administrator and to that of the appellants as heirs of the decedent.

We find no merit in appellants' contention that Anna Fay Bush was an adverse party so as to be incompetent to testify in the instant case. It is settled that an adverse party for purposes of the statute is determined by an analysis of actual interests rather than by his or her formal designation as a party. (E. Cleary & M. Graham, Illinois Evidence sec. 606.3, at 301 (4th ed. 1984).) The question in every case is whether the testimony of the party-witness will be of benefit to him or her as against the protected party. E. Cleary & M. Graham, Illinois Evidence sec. 606.3, at 301-02 (4th ed. 1984).

In the instant case Anna Fay Bush was named as a party-defendant, both individually and as trustee, in the plaintiff's action to determine the rights of the parties in the property of the decedent. She did not, however, have any actual interest in the outcome of the action. Her capacity as trustee under the "Living Trust Agreement" was insufficient to disqualify her for purposes of the statute. (See Ill. Rev. Stat. 1985, ch. 110, par. 8—201(c).) Moreover, since the result of the action would either cause the property in question to pass to the designated grantees or to the decedent's heirs as part of his estate, Anna Fay Bush stood to gain nothing as a result of the suit.

For the same reasons Anna Fay Bush was not disqualified as a "person directly interested in the action." A disqualifying interest under the Dead Man's Act "must be a legal interest which is direct, certain and immediate so that the party will gain or lose as a result of the suit." (*Citizens National Bank v. Doran* (1954), 3 Ill. App. 2d 383, 399, 122 N.E.2d 450, 458.) In her brief on appeal, appellant Harriett Herron asserts that "[w]hile Anna Fay Bush may not have benefited directly and financially from her testimony, she did have a definite emotional interest in seeing that her brother's 'new wife' did not get her hands on his estate." Any such "emotional interest" on the part of Anna Fay Bush, while bearing on her credibility as a witness, would not bar her testimony under the Dead Man's Act, as it is settled that a disqualifying interest must be of a pecuniary nature. (See *Michalski v. Chicago Title & Trust Co.* (1977), 50 Ill. App. 3d 335, 365 N.E.2d 654; *In re Estate of Truman* (1975), 32 Ill. App. 3d 886, 336 N.E.2d 766.) Anna Fay Bush thus was neither an adverse party nor a party directly interested in the suit, and the trial court correctly allowed the testimony of Anna Fay Bush over the defendants' objections based on the Dead Man's Act.

Assuming that Anna Fay Bush was competent to testify concerning the decedent's purported delivery of the deeds, the defendants-appellants contend further that the evidence was insufficient to show that the decedent had parted with all dominion and control over the deeds as found by the trial court so as to constitute a valid delivery. The appellants assert that notwithstanding Anna Fay Bush's testimony regarding the decedent's delivery of the deeds, the court must look at the totality of the circumstances, including the conduct and actions of the decedent both before and after his purported delivery of the deeds, to determine the intent of the decedent regarding the deeds.

The appellants note, in particular, that after the decedent's purported delivery of the deeds to Anna Fay Bush in March 1982, the decedent continued to manage the property as he had before, paying the taxes and insurance, choosing and directing the farm tenants, and collecting rents from the farm property. In addition, they assert, the decedent's execution of an oil-and-gas lease on one of the properties in August 1982 and the decedent's representation during preparation of the antenuptial agreement in August 1983 that he owned the three tracts subject to the deeds showed that the decedent lacked the requisite intent that the deeds become presently operative. Finally, the appellants point to the "ambiguous oral instructions purportedly given by a brother to his sister, her perception of those instructions as being in furtherance of a trust arrangement, and the evidence that Anna Fay Bush complied with every direction and *** suggestion ever [given] to her *** pertaining to [the decedent's] property" as evidence that the decedent failed to relinquish all control and dominion over the deeds as required for a valid delivery.

 █ It is settled that delivery of a deed is essential and indispensable to render it operative as a conveyance. The intention of the grantor is the primary and controlling factor in determining whether there has been a delivery. Anything that clearly manifests the grantor's intention that the deed become operative, that he lose control of the deed, and that the grantee become the owner of the estate purported to be conveyed is sufficient to show delivery. (*McClugage v. Taylor* (1933), 352 Ill. 550, 186 N.E. 145.) Where a grantor makes a deed and delivers it to a third person to be delivered to the grantee upon the happening of some future event, such as the death of the grantor, and the grantor surrenders all control and dominion over the deed, such act constitutes a complete and valid delivery by the grantor. (*McClugage v. Taylor* (1933), 352 Ill. 550, 186 N.E. 145.) A deed so delivered does not operate to convey title to the grantee un-

til the happening of the event upon which the grantee is to become entitled to the possession of the deed. *McClugage v. Taylor* (1933), 352 Ill. 550, 186 N.E. 145.

■ In cases of delivery of a deed in escrow to a third person, the controlling question is whether or not the grantor reserved the right to recall or revoke his action. The presumption of law is in favor of delivery, and the burden of proof is upon the grantor, and upon those claiming through him, to show that there was no delivery. (*McReynolds v. Miller* (1939), 372 Ill. 151, 22 N.E.2d 951.) The decisive issue is whether the grantor reserved control over the deed at the time of its delivery, and if there was no such reservation at the time, subsequent attempts to revoke, such as destruction or repossession of the deed, are ineffectual, and the delivery is binding. *McReynolds v. Miller* (1939), 372 Ill. 151, 22 N.E.2d 951.

■ Applying these principles in the instant case, it is evident that the decedent's actions towards the properties in question following his deposit of the deeds with Anna Fay Bush did not prevent such delivery from being effective, since the effectiveness of delivery depended, not on the decedent's actions toward the property itself, but on his surrender of all control over the deeds of conveyance. Since the deeds were not to be delivered to the grantees until the decedent's death, the deeds did not operate to convey title to the grantees until the happening of the event upon which the grantees were to become entitled to possession. (*McClugage v. Taylor* (1933), 352 Ill. 550, 186 N.E. 145.) Thus, it was entirely proper for the decedent to continue to deal with the property as he did, and his actions in no way tended to show that the deeds were not delivered. Rather, as was the case in *McClugage v. Taylor*, in which property subject to deeds delivered in escrow was properly listed as the grantor's property prior to occurrence of the event upon which they were to be delivered to the grantees, the decedent here properly executed the oil-and-gas lease on one of the tracts in question and listed the three tracts as his separate property on the schedule for the antenuptial agreement, since title to that property did not pass to the grantees until after the decedent's death.

■ In determining whether the delivery here was effective to pass title to the decedent's property, then, we must consider the circumstances of the delivery to determine whether the grantor reserved the right to recall or revoke his action or whether he relinquished all control over the deeds at the time of their delivery. (*McReynolds v. Miller* (1939), 372 Ill. 151, 22 N.E.2d 951.) Notwithstanding the appellants' assertions regarding the decedent's deposit

of the deeds with Anna Fay Bush, it was her testimony that the decedent instructed her to give the deeds to his children upon his death and that there was "no condition" stated by the decedent. The instant case is thus unlike *Linn v. Linn* (1914), 261 Ill. 606, 104 N.E. 229, cited by the appellants, in which the grantor inquired whether he would have the right to withdraw the deeds in case he should desire to dispose of the land and then deposited them with a third party with instructions to put the deeds away and keep them for the grantor. (See also *Deitz v. Deitz* (1920), 295 Ill. 552, 129 N.E. 508 (no valid delivery where grantor placed deeds with third party for safe-keeping with no instructions to deliver to grantees and grantor thereafter had access to deeds upon request).) While the appellants assert that, because of the brother-sister relationship between the decedent and Anna Fay Bush, she would have given the deeds back to him if he had asked for them, any such willingness on the part of Anna Fay Bush to return the deeds would be irrelevant to the decedent's intention to relinquish all control of the deeds at the time he delivered them to Anna Fay Bush. (*Cf. McClugage v. Taylor* (1933), 352 Ill. 550, 186 N.E. 145 (evidence that deeds would have been returned to the grantors upon request failed to show that it was not the intention of the grantors to relinquish control of the deed and have it become operative when delivered).) The decedent, in fact, made no such effort to recall the deeds but permitted them to stay in the possession of Anna Fay Bush until the occurrence of the event for vesting final possession with his children, namely, his death. (See *Dry v. Adams* (1937), 367 Ill. 400, 11 N.E.2d 607.) Any perception on the part of Anna Fay Bush that she held the deeds in her capacity as trustee was likewise irrelevant to the question of the decedent's intent. The decedent's instructions to Anna Fay Bush, far from being ambiguous, showed that the decedent intended to part with all control over the deeds at the time they were delivered, and we find no basis upon which to overturn the trial court's decision to that effect.

For the reasons stated in this opinion, we affirm the judgment of the circuit court of Shelby County.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.