LOIS SMITH, as Personal Representative of the Estate of Joe Levy, Plaintiff-Appellant, v. ARTHUR LEVY, Defendant-Appellee.

First District (6th Division)   No. 1—89—1279

Opinion filed June 22, 1990.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Grumley, Marc C. Smith, and Steven B. Rissman, of counsel), for appellant.

Torshen, Schoenfield & Spreyer, Ltd., of Chicago (Jerome H. Torshen, Mark K. Schoenfield, and Zoran Dragutinovich, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The subject of this appeal is a judgment entered by the circuit court of Cook County holding that the bearer bonds in the decedent's safe deposit box were an *inter vivos* gift to defendant. The issues on appeal are: (1) whether the trial court erred in finding that the decedent made a valid *inter vivos* gift to defendant; and (2) whether the joint tenancy of two accounts which defendant held with his parents was severed as to bearer bonds which were removed from the accounts and placed in a safe deposit box. We reverse.

Joe and Yetta Levy were the parents of Steven and Ira Levy, as well as the defendant Arthur Levy and the plaintiff Lois Smith. In 1977 Joe and Yetta Levy moved from Illinois to Florida, where they resided until their deaths. Shortly after they moved to Florida, Joe Levy rented a safe deposit box from a Florida bank. Yetta Levy and plaintiff were included as signatories at that time. Defendant became a signatory on the safe deposit box after Yetta Levy died in 1982.

In June 1982, Yetta Levy opened an account with the securities firm of Bache Halsey Stuart (Prubache). This account, which was identified as HS 26783, named Yetta Levy and defendant as joint tenants with rights of survivorship. A second account opened by Yetta Levy five months later and identified as HS 27317 listed Joe Levy, Yetta Levy and defendant as joint tenants with rights of survivorship. After opening the accounts, Yetta Levy purchased nine bearer bonds through account No. HS 26783 and one bearer bond through account No. HS 27317. At the time of Yetta Levy's death on November 29, 1982, the nine bearer bonds from account HS 26783 had been removed from the joint tenancy account and placed in the safe deposit box leased by Joe Levy. Although the record does not indicate when the one bearer bond in account No. HS 27317 was removed from that account, it was in the safe deposit box at the time of Joe Levy's death. Yetta Levy bequeathed her entire estate to Joe Levy.

On February 19, 1983, Joe Levy died testate, bequeathing only one dollar from his estate to defendant. Plaintiff was appointed personal representative of the decedent's estate. Shortly after his father's death, defendant entered the decedent's safe deposit box and removed the contents, which included the 10 bonds which are at issue in this appeal. The parties stipulated that an "R" on the confirmation slip indicated that the bond was registered and "CP" indicated that the bond was a bearer bond. The record contains 10 confirmation slips which are marked with "CP." Defendant converted the bonds and opened new accounts with his wife and children. Plaintiff then filed a complaint against defendant, seeking an accounting, a return of the

property to the safe deposit box, imposition of a constructive trust and punitive damages. At the trial, the decedent's nurse testified that several hours before his death, the decedent gave her the key to his safe deposit box with instructions that she was to give the key to defendant because everything in the box belonged to him. At the conclusion of the trial, the court found that the contents of the safe deposit box, including the 10 bearer bonds, were an *inter vivos* gift to defendant.

■■ Plaintiff contends that the trial court erred in finding that the decedent made a valid *inter vivos* gift to defendant because the gift was not completed prior to the donor's death. In order to make a legally effective *inter vivos* gift, there must be intent by the donor to make the gift, absolute and irrevocable delivery of the property to the donee or the donee's agent with the intention of vesting title, and there must be evidence of acceptance by the donee. (*Pocius v. Fleck* (1958), 13 Ill. 2d 420, 428, 150 N.E.2d 106; *Sullivan v. American Telephone & Telegraph Co.* (Fla. App. 1969), 230 So. 2d 18, 20.) If the gift is not completed and executed in the lifetime of the donor, his death revokes the part which has been performed. *Pocius v. Fleck*, 13 Ill. 2d at 428. See also *Kuebler v. Kuebler* (Fla. App. 1961), 131 So. 2d 211, 215.

■■ ■ In the instant case, the trial court found that the decedent made an *inter vivos* gift to defendant when, several hours before his death, he gave his nurse the key to his safe deposit box and instructed her to give the key to defendant. At that time, he also made the statement that the contents of the box belonged to defendant. Delivery to a third person as an agent of the donee is an irrevocable gift which is unaffected by the death of the donor before the property is received by the donee, but if the third person is the agent of the donor, the gift is not complete. Furthermore, in the absence of a contrary showing, the third person is presumed to be the agent of the donor. (*Pocius v. Fleck*, 13 Ill. 2d at 428.) In this case, because there was not any evidence that decedent's nurse was defendant's agent, the presumption is unrebutted that the nurse was Joe Levy's agent. Therefore, defendant did not receive the key or the contents of the safe deposit box prior to the decedent's death, and the delivery of the gift was not completed.

■ Defendant argues that even if the decedent's delivery of the safe deposit key to his nurse was not an effective *inter vivos* gift, the bearer bonds at issue belonged to him as a surviving joint tenant of the Prubache accounts through which the bonds were purchased. Defendant cites *Murgic v. Granite City Trust & Savings Bank* (1964),

31 Ill. 2d 587, 202 N.E.2d 470, and *Kuebler* (131 So. 2d 211) for the proposition that with the creation of a joint tenancy account, a gift *inter vivos* is presumed. However, where property is removed from a joint tenancy account, and one of the four unities of interest, time, title and possession is destroyed, the joint tenancy is severed. *In re Marriage of Dowty* (1986), 146 Ill. App. 3d 675, 678, 496 N.E.2d 1252; *Wiggins v. Parson* (Fla. App. 1984), 446 So. 2d 169, 172.

■ When Yetta Levy removed the nine bearer bonds from the account she held in joint tenancy with defendant and placed them in the safe deposit box to which defendant was not yet a signatory, defendant no longer had possession of the bonds, and the joint tenancy as to this property was severed. This was particularly true where the bonds at issue were bearer bonds which were payable to the bearer or person in possession of them. Ill. Rev. Stat. 1983, ch. 26, par. 1–201(5).) See also Fla. Stat. 1983, §671.1–201(5).

Although defendant claims that the bonds never lost their joint nature because they were placed in a safe deposit box to which defendant had access as a signatory, this argument is only applicable to the one bearer bond that was in Prubache account No. HS 27317, which was held by Yetta Levy, Joe Levy and defendant as joint tenants. The record does not indicate when the bearer bond in this account was placed in the safe deposit box and whether defendant was a signatory to the safe deposit box at that time. However, even if this bearer bond were placed in the safe deposit box when defendant was a signatory, his argument fails where he did not have the key to the safe deposit box in his possession and he presented no other evidence that he exercised access or control over the contents of the box prior to the decedent's death. Therefore, defendant did not have continuous possession of this bond as well.

Defendant relies on *Winterton v. Kaufmann* (Fla. App. 1987), 504 So. 2d 439, in support of his argument that the bonds retained their joint nature when they were transferred from a joint tenancy account held by defendant as one of the joint tenants to a safe deposit box to which he had access as a signatory. However, in *Winterton* the court held that the bonds retained their joint nature on transfer to the safe deposit box because the defendant in that case had her own key, which she often used to gain access to the box. Additionally, her frequent exercise of control over the contents of the safe deposit box was consistent with her continued joint possession and ownership of the assets. (*Winterton*, 504 So. 2d at 443.) Because defendant did not show that he had continuous access to the bond at issue when it was transferred from the joint tenancy account to the safe deposit box,

the bond did not retain its joint nature, and the joint tenancy was also severed as to this bond.

For these reasons, we reverse the judgment of the circuit court and remand for further proceedings.

Judgment reversed and remanded.

LaPORTA, P.J., and McNAMARA, J., concur.