**In re William and Carol STROTHEIDE, Debtors.**

**Charles E. JONES, Trustee, Plaintiff,**

**v.**

**Harold STROTHEIDE, Leona Strotheide, Gerald Strotheide, and Clyde Strotheide, Defendants.**

**Bankruptcy No. BK 91–30322.
Adv. No. 91–3046.**

United States Bankruptcy Court, S.D. Illinois.

July 13, 1992.

Terry Sharp, Mt. Vernon, Ill., for trustee.

Donald Samson, Belleville, Ill., for defendants.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

This case is a classic example of well-laid plans gone awry.[1] The facts are undisputed. Harold and Leona Strotheide, parents of debtor William Strotheide, owned three parcels of real estate in Clinton County, Illinois. For a number of years they had planned to leave a parcel of real estate to each of their three sons, William, Gerald, and Clyde. The elder Strotheides moved into a nursing home in July 1990. In October 1990, they spoke with daughter-in-law Judy Strotheide, wife of Gerald, about putting their land in a trust for the benefit of their three sons.

Judy Strotheide contacted attorney Bernard Heiligenstein to set up the trust. The three sons were told in general terms of their parents' intentions. In January 1991, Judy Strotheide met with Heiligenstein and made arrangements for him to visit the Strotheides at the nursing home to discuss

---

1. As Robert Burns put it:
   The best laid schemes o' mice and men
      Gang aft a-gley;
   An' lea'e us nought but grief and pain,
   For promis'd joy.
         'To A Mouse.' Stanza 7.
   J. Bartlett, *Familiar Quotations,* at 390a (13th ed. 1955).

the proposed transaction. During the resulting meeting, Heiligenstein recommended to the parents that, rather than create a trust, they convey the property to their children outright with a retention of income for 30 months in order to obtain maximum estate planning benefits concerning Medicaid eligibility for nursing home residents.

Late in the afternoon of March 20, 1991, Judy Strotheide and Lois Heiligenstein, wife and secretary of Bernard Heiligenstein, went to the nursing home. At that time Harold and Leona Strotheide executed three deeds conveying a 60 acre parcel of farmland to William, an 80 acre parcel to Gerald, and an 80 acre parcel to Clyde. Lois Heiligenstein then took the three deeds to be recorded.

The following morning, on March 21, 1991, the bankruptcy petition of William and Carol Strotheide was filed at 9:06 a.m. Approximately an hour and a half later, at 10:25 a.m., the deeds were recorded in the Clinton County recorder's office. William and Carol Strotheide, who had mistakenly assumed their bankruptcy petition was filed prior to execution of the deeds on March 20,[2] learned of these events and filed a disclaimer of their interest in the 60 acres of real estate. Harold and Leona Strotheide subsequently executed another deed conveying the 60 acre tract to the other two brothers, Clyde and Gerald Strotheide.

The trustee of the debtors' bankruptcy estate instituted this action to avoid the debtors' alleged postpetition transfer of the real estate and obtain turnover of the property. The trustee asserts that the 60 acre tract became property of the estate upon the debtors' bankruptcy filing and that the subsequent disclaimer constituted an unauthorized transfer subject to avoidance under 11 U.S.C. § 549.[3] The defendants, Harold, Leona, Gerald and Clyde Strotheide, respond that the gift of real estate by the elder Strotheides was not complete at the time of the debtors' bankruptcy filing and that the property thus never became part of the bankruptcy estate. While conceding that the parents had the necessary donative intent to make a gift to the debtors, the defendants assert that there was no delivery of the gift because the deed was never out of the control of the grantors until it was recorded shortly after the debtors' bankruptcy filing.

█ Resolution of the trustee's complaint depends on whether, at the time of filing, the debtors had an interest in the deeded real estate under state law pertaining to gifts.[4] A valid gift of real property in Illinois requires satisfaction of three elements: execution of a deed with intent to convey, delivery of the deed, and acceptance by the grantee. *Gallagher v. Girote*, 23 Ill.2d 170, 174, 177 N.E.2d 103, 106 (1961); *Chicago Land Clearance Comm. v. Yablong*, 20 Ill.2d 204, 206, 170 N.E.2d 145, 146 (1960). The parties here do not dispute the grantors' intent to make a gift but disagree concerning whether delivery was accomplished prior to filing.

The trustee and the defendants have each filed motions for summary judgment. The Court has before it deposition testimony concerning the parents' execution and delivery of the deeds and must determine only the legal effect of the facts presented on the issue of delivery.

█ Under Illinois law, delivery of a deed is essential to render it operative as a conveyance. *McClugage v. Taylor*, 352 Ill. 550, 557, 186 N.E. 145, 148 (1933); *Herrin v. McCarthy*, 339 Ill. 530, 534, 171 N.E.

---

**2.** The debtors' petition was signed on March 18, 1991, but was not received and file-marked in the bankruptcy court until March 21, 1991.

**3.** Section 549 provides that
  the trustee may avoid a transfer of *property of the estate*—
    (1) that occurs after the commencement of the case; and

  .    .    .    .    .

    (2)(B) that is not authorized ... by the court.

11 U.S.C. § 549(a) (emphasis added).

**4.** Section 541 includes as property of the estate "all ... interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code provides no basis for determining a debtor's interest in property, and resort must be had to nonbankruptcy or state law. *See* 4 *Collier on Bankruptcy,* ¶ 541.02[1] (15th ed. 1992).

621, 623 (1930). The intention of the grantor is the primary and controlling factor in determining whether there has been a delivery, and anything which clearly manifests the grantor's intention that the deed become operative, that the grantor lose control thereof, and that the grantee become the owner of the deeded property is sufficient to show delivery. *McClugage; Herrin.* No special form or ceremony is required, and manual delivery of the deed is neither necessary nor effective to transfer title in the absence of such intent. *Alexander v. American Bible Society,* 407 Ill. 49, 56, 94 N.E.2d 833, 837 (1950); *Herrin.* Rather, the grantor's intent to transfer title may be shown by words or acts or by circumstances surrounding the transaction. *Alexander.*

■ In arguing that the parents' deed had not been delivered at the time of filing, the defendants point out that the deed was recorded only after the debtors' bankruptcy petition was filed. Recording of a deed does not constitute delivery and merely serves as notice to the world that title has passed. *Gallagher,* 23 Ill.2d at 175, 177 N.E.2d at 106; *Lucas v. Westray,* 408 Ill. 243, 248, 96 N.E.2d 623, 625 (1951). Since title passes at the time of delivery, it begs the question to look to recording as the time when delivery occurred. Indeed, recording of a deed raises a presumption that the deed was delivered "on the date it bears," not on the date of its recording. *Berigan v. Berigan,* 413 Ill. 204, 216, 108 N.E.2d 438, 445 (1952); *see McGhee v. Forrester,* 15 Ill.2d 162, 154 N.E.2d 230 (1958). Under this presumption, delivery in the present case would have been prior to filing on March 20, the date the deed was executed, rather than at the time of recording on March 21.

The defendants contend, however, that delivery did not occur when the deed was executed on March 20 because the parents retained control of the deed through their agent and had the power to recall or nullify the deed until it was actually presented to the recorder of deeds on March 21. After

execution, the deed was given to Lois Heiligenstein, attorney Heiligenstein's employee, to be recorded. The defendants maintain that at any time prior to recording, the parents could have informed their attorney they had changed their minds and the deed would have been returned to them or destroyed. Thus, the defendants assert, possession of the deed by the parents' agent rendered ineffective any supposed delivery to the debtors prior to their bankruptcy filing.

■ As discussed above, delivery of a deed occurs when the grantor relinquishes control over the deed with the intent that it become presently operative. Delivery may be made through a third person without actual delivery to the grantee; however, if delivery is made to a third person as agent for the grantor, the gift is not complete. *Pocius v. Fleck,* 13 Ill.2d 420, 428, 150 N.E.2d 106, 111 (1958); *In re Estate of Meyer,* 317 Ill.App. 96, 102, 45 N.E.2d 495, 498 (1942). An absolute delivery whereby the grantor parts with ownership and control over the subject matter renders the third person a trustee on behalf of the grantees for the purpose of carrying out the grantor's intent. *See In re Estate of Field,* 99 Ill.App.2d 235, 242, 240 N.E.2d 765, 768 (1968); *In re Estate of Wright,* 304 Ill.App. 87, 94–95, 25 N.E.2d 909, 913 (1940). Whether the person to whom delivery is made receives it as the grantor's agent or as trustee for the grantee is to be determined from the intention of the grantor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto as disclosed by the evidence. *Meyer; In re Estate of Waggoner,* 5 Ill.App.2d 130, 138, 125 N.E.2d 154, 158 (1955).

■ Illinois courts apply the presumption that a third person to whom delivery is made is, in the absence of a contrary showing, an agent of the grantor. *See Pocius; Smith v. Levy,* 200 Ill.App.3d 554, 556, 146 Ill.Dec. 319, 321, 558 N.E.2d 282, 284 (1990); *Chicago Savings Bank & Trust Co. v. Cohn,* 197 Ill.App. 326, 329 (1916).[5]

**5.** *Pocius v. Fleck* is the leading case for the proposition that a third person is presumed to be the agent of the grantor or donor. Curious-

ly, one of the cases cited as support for this proposition, *Chicago Savings Bank & Trust Co. v. Cohn,* relies on a Minnesota case, *Varley v.*

This presumption does not obtain in the present case, however, because the evidence shows that Heiligenstein acted not only for the parents as grantors but also for the children as grantees and became their agent or trustee when the parents relinquished all control of the deeds upon execution.

Deposition testimony taken from Clyde, Gerald, and Judy Strotheide and from Bernard and Lois Heiligenstein indicates that execution of the deeds by the elder Strotheides effectuated a long-standing plan to divide their land between the three sons. Judy Strotheide, who conducted the parents' business affairs pursuant to a power of attorney, consulted with attorney Heiligenstein at various times from January to March 1991 to determine how this should be done. In early March Heiligenstein went to the nursing home to meet the elder Strotheides. From this meeting he concluded that the parents were competent to execute deeds and that they understood they were giving away their land to the children. Judy Strotheide told him which tract of land would go to which son, and Heiligenstein prepared the deeds.

On March 16, the Saturday before execution of the deeds, Judy Strotheide told the three sons the parents were going to deed the farm land to them. The purpose for the conveyance, as stated by Gerald Strotheide, was to protect the parents' property from "being completely used up for health care reasons." When Judy and Lois Heiligenstein took the deeds to the parents on March 20, Judy again explained to the parents how the farm would be conveyed, and the parents agreed and signed the deeds.

After the signing, Judy left the deeds with Lois Heiligenstein because Lois told her she would record them the next day. Bernard Heiligenstein was not present at the signing and thought that Judy had taken the deeds to be recorded. He stated that the parents had given him no instructions about recording the deeds when he met with them. The deeds were mailed back to Heiligenstein's law office after recording, and he contacted Judy Strotheide to come by for the deeds and distribute them.

Judy later picked up Clyde and Gerald's deeds but did not take the debtors' deed because Heiligenstein said there was "some kind of question with it." Clyde Strotheide stated that he received a copy of the deed in April when his sister-in-law gave it to him in church. Gerald Strotheide testified that he did not receive a deed personally from his parents but was "just made aware that I had it" when his wife informed him "it had been done."

William Strotheide told Judy two and a half weeks before the deeds were signed that he had filed for bankruptcy. He gave no details but she asked him a couple of times and he said, "I have filed." Judy stated that William and Carol Strotheide contacted her repeatedly after the deeds were signed to obtain a copy of their deed, but she advised them that attorney Heiligenstein had the deed.

From these facts surrounding execution of the deeds, it is evident that the elder Strotheides intended to divest themselves of their property and understood when they signed the deeds that they were transferring the property to their children. The stated purpose of ridding themselves of property to gain eligibility for Medicaid is a strong indication that they intended a present transfer to the children. The parents retained no right of recall over the deeds and set forth no restrictions or conditions on their operation. Indeed, the only limitation imposed by the parents was the reservation of income for a period of time, which, in itself, raises a presumption that

*Sims,* 100 Minn. 331, 111 N.W. 269 (1907), which instead states the rule as "unless the contrary appears, it will be presumed that the person to whom delivery is made takes as the trustee of the *donee.*" 100 Minn. at 337, 111 N.W. at 270 (emphasis added). *See also Meyer,* 317 Ill.App. at 103, 45 N.E.2d at 498, in which the court quoted *Varley* correctly and found that there was sufficient evidence to rebut the presumption that the third person was trustee for the donee. The other case relied on in *Pocius, In re Estate of Waggoner,* does not contain the proposition stated. Perhaps the *Pocius* court derived its rule from the accepted principle that the law never presumes a gift and the donee has the burden of proving a valid gift by clear and convincing evidence. *See Dudley v. Uptown National Bank of Moline,* 25 Ill.App.2d 514, 521, 167 N.E.2d 257, 261 (1960); *Meyer,* 317 Ill.App. at 104, 45 N.E.2d at 499.

the grantors intended the deeds to have immediate effect, as otherwise there would be no necessity for the reservation. *See McGhee v. Forrester*, 15 Ill.2d at 165, 154 N.E.2d at 232; *McClugage v. Taylor*, 352 Ill. at 558, 186 N.E. at 149.

In the absence of any restriction as to transfer or retention of control by the parents, delivery of the deeds was effective upon signing and was not contingent upon further action by attorney Heiligenstein. Heiligenstein's possession of the deeds after signing, therefore, could only be as agent or trustee for the children as grantees. *See Field; Meyer.* The evidence bears this out, as Heiligenstein proceeded to distribute the deeds to the children after recording without additional contact with the parents. The fact, moreover, that Lois Heiligenstein rather than Judy Strotheide took the deeds for recording appears to have been for the sake of convenience and not to fulfill any obligation to the parents. While the defendants speculate that Heiligenstein would have returned or destroyed the deeds if the parents had notified him prior to recording, any willingness on the part of Heiligenstein to so accommodate the grantors is not relevant to the parents' intention to relinquish all control of the deeds at the time of signing. *See McClugage v. Taylor*, 352 Ill. at 559, 186 N.E. at 149; *Herron v. Underwood*, 152 Ill.App.3d 144, 156, 105 Ill.Dec. 105, 113, 503 N.E.2d 1111, 1119 (1987).

Once delivery had occurred upon execution of the deeds, it could not be affected by subsequent events such as the debtors' bankruptcy filing. Undoubtedly, the parents' conveyance of the property to the debtors would have been delayed had there been no mistake concerning when the petition was filed, as it may be assumed that they intended for the debtors, and not the debtors' creditors, to receive the deeded property. However, where a grantor has effected a present delivery with no reservation of control, the delivery is binding and may be enforced notwithstanding a subsequent change of mind or circumstances. *Cf. McReynolds v. Miller*, 372 Ill. 151, 22 N.E.2d 951 (1939) (grandmother's deed conveying farm to grandson, which was delivered to escrow agent without right of recall, would be enforced despite grantor's change of mind after grandson left to live with aunt). The debtors thus had an enforceable right to the subject property when the deeds were delivered to attorney Heiligenstein after signing, and this right was not affected by Heiligenstein's decision, upon learning of the debtors' bankruptcy filing, to retain their deed rather than distribute it along with the other contemporaneously executed deeds.

The remaining element for a completed gift—acceptance by the grantee—may be presumed in a case such as this where there is a voluntary family settlement for the benefit of the grantee and the grantee knows of the conveyance. *See Parker v. Roberts*, 408 Ill. 159, 162, 96 N.E.2d 533, 534 (1951); *see generally* 38 Am.Jur.2d *Gifts*, § 96 (1968). The evidence shows that Judy Strotheide discussed the parents' planned conveyance with debtor William Strotheide, and he assured her he had already filed his bankruptcy petition, indicating that he would be able to receive the deeded property free of the claims of estate creditors. The debtors' disclaimer, executed after they learned of the actual timing of their petition, is unavailing to negate the debtors' presumed acceptance, as the debtors lost the power to deal with estate property upon commencement of their bankruptcy case.

The Court finds that the parents' gift of the subject real estate was complete upon the delivery of the deed prior to the debtors' bankruptcy filing. The debtors had an enforceable property interest under the executed deed that became property of the estate and passed to the bankruptcy trustee. The disclaimer executed by the debtors postpetition thus constituted an unauthorized transfer of estate property that is subject to avoidance under § 549.

For the reasons stated, the Court grants the trustee's motion for summary judgment and denies the defendants' cross motion for summary judgment.